1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  KENNETH T. ROOST, State Bar No. 231444
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5824
    Fax:  (415) 703-5843
8   Email: Ken.Roost@doj.ca.gov

9  Attorneys for Defendants Tilton, Scavetta, Horel,
   Silva, McGuyer, Vanderhoofven, Countess, Milligan,
10 Estes, Enos and Barneburg

11

IN THE UNITED STATES DISTRICT COURT

12

FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

SAN FRANCISCO DIVISION

14

| | |
|---|---|
| 15  **JUAN ANGEL MARTINEZ, JR.,** | C 07-4684 CRB (PR) |
| 16                             Plaintiff, | |
| 17          v. | |
| 18  **JAMES E. TILTON, et al.,** | |
| 19                             Defendants. | |

20

21  **DEFENDANTS' NOTICE OF MOTIONS AND MOTIONS TO DISMISS**

22  **AND FOR SUMMARY JUDGMENT**

23

24

25

26

27

28

# TABLE OF CONTENTS

| | Page |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | 2 |
| Statement of Issues | 2 |
| Statement of the Case | 3 |
| Statement of Facts | 3 |
| Argument | 6 |

I. MARTINEZ FAILS TO RAISE ANY CONSTITUTIONAL CLAIM.    6

    A. Martinez's Claim Concerning Three Confiscated Letters Must Be Dismissed Because No Constitutional Claim Is Raised.    6

    B. Martinez's Claim Concerning the Point-of-Origin Stamping Policy Must Be Dismissed Because No Constitutional Claim Is Raised.    6

II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THE POINT-OF-ORIGIN STAMPING POLICY REASONABLY RELATES TO LEGITIMATE PENOLOGICAL PURPOSES.    7

    A. Legal Standard for Summary Judgment.    7

    B. Legal Standard for Prison-Mail Claims.    7

    C. The Policy Under Which Outgoing SHU Mail Receives a Place-of-Origin Stamp Meets the *Turner* Test.    8

        1. The Point-of-Origin Stamping Policy Protects Lives and Prison Security.    8

        2. Martinez Can Still Send Legible Correspondence.    9

        3. Disallowing Point-of-Origin Stamps Will Endanger Lives and Prison Security, and Leave CDCR No Alternative Means of Stopping Prison-Gang Communications.    10

        4. Applying Point-of-Origin Stamps Is Not an Exaggerated Response to Life-Threatening Prison-Gang Communications.    10

III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST THE CLAIMS CONCERNING CONFISCATED MAIL BECAUSE MARTINEZ RECEIVED NOTICE OF CONFISCATION, AND APPEALED THE ISSUE TO PRISON OFFICIALS OTHER THAN THE ONES MAKING THE INITIAL CONFISCATION DECISIONS.    11

        1. Appeal C-06-02404 Concerned Noticed Confiscation of a Letter, and Was Heard by Prison Officials Other Than Those Making the Initial

Defs.' Mots. Dismiss & Summ. J.                            *Martinez v. Tilton, et al.*
C 07-4684 CRB (PR)

i

**TABLE OF CONTENTS  (continued)**

Page

Confiscation Decision. ........................................................................ 11

2. Appeals C-07-00012 and C-07-00269 Each Concerned Noticed
   Confiscation of a Letter, and Were Heard by Prison Officials Other
   Than Those Making the Initial Confiscation Decision. ........................ 11

IV. DEFENDANTS MERELY INVOLVED IN THE ADMINISTRATIVE-
GRIEVANCE PROCESS ARE NOT LIABLE FOR ANY
CONSTITUTIONAL HARM . ..................................................................... 12

V. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY. .......... 12

A. The Standard for Finding Qualified Immunity. .............................. 12

B. Martinez Has Not Alleged Violation of Any Constitutional Right. ... 13

C. Defendants Are Entitled to Qualified Immunity Because It Would Not
   Have Been Clear to Reasonable Officials that Their Conduct Was
   Unlawful. ........................................................................................ 14

Conclusion ........................................................................................................ 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defs.' Mots. Dismiss & Summ. J.                                   *Martinez v. Tilton, et al.*
                                                                 C 07-4684 CRB (PR)

ii

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

5
*Anderson v. Creighton*
483 U.S. 635 (1987) ............................................................................. 13

6
*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ............................................................................. 7

7

8
*Buckley v. Barlow*
997 F.2d 494 (8th Cir. 1993) ............................................................ 12, 14

9
*Burns v. Reed*
500 U.S. 478 (1991) ............................................................................. 12

10

11
*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ............................................................................. 7

12
*Eisenberg v. Ins. Co. of N. Am.*
815 F.2d 1285 (9th Cir. 1987) ........................................................... 7

13

14
*First Nat'l Bank of Ariz. v. Cities Serv. Co.*
391 U.S. 253 (1968) ............................................................................. 7

15
*Friedman v. Arizona*
912 F.2d 328 (9th Cir. 1990) ............................................................ 8

16

17
*Frost v. Symington*
197 F.3d 348 (9th Cir. 1999) ............................................ 6, 8, 9, 11

18
*Harlow v. Fitzgerald*
457 U.S. 800 (1982) ............................................................................. 12

19

20
*Krug v. Lutz*
329 F.3d 692 (9th Cir. 2003) ............................................................ 6

21
*Mann v. Adams*
855 F.2d 639 (9th Cir. 1988) ............................................................ 12, 14

22
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
23
475 U.S. 574 (1986) ............................................................................. 7

24
*Mauro v. Arpaio*
188 F.3d 1054 (9th Cir. 1999) ........................................................... 8, 9

25

26
*Pell v. Procunier*
417 U.S. 817 (1974) ............................................................................. 10

27
*Ramirez v. Galaza*
334 F.3d 850 (9th Cir. 2003) ............................................................ 12, 14

28

**TABLE OF AUTHORITIES  (continued)**

                                                                    **Page**

*Saucier v. Katz*
533 U.S. 194 (2001)                                                 13, 14

*Thornburgh v. Abbott*
490 U.S. 401 (1989)                                                 6-8

*Turner v. Safley*
482 U.S. 78 (1987)                                                  8-10

*Witherow v. Paff*
52 F.3d 264 (9th Cir. 1995)                                         6


**Constitutional Provisions**


United States Constitution
        First Amendment                                             2, *passim*


**Statutes**


California Code of Regulations
        Title 15
                § 3084.1(a)                                         3
                § 3084.5                                            3
                § 3139                                              10

United States Code
        Title 42
                § 1983                                              3, 12


**Court Rules**


Federal Rule of Civil Procedure
        Rule 12(b)(6)                                               1
        Rule 56                                                     1, 7
        Rule 56(e)                                                  7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  KENNETH T. ROOST, State Bar No. 231444
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
7   Telephone: (415) 703-5824
    Fax: (415) 703-5843
8   Email: Ken.Roost@doj.ca.gov

9  Attorneys for Defendants Tilton, Scavetta, Horel,
   Silva, Vanderhoofven, McGuyer, Enos, Barneburg,
10 Countess, Milligan, and Estes

11

12              IN THE UNITED STATES DISTRICT COURT

13            FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15

16  **JUAN ANGEL MARTINEZ, JR.,**                    C 07-4684 CRB (PR)

                                      Plaintiff,
17                                                   **DEFENDANTS' NOTICE OF
                                                     MOTIONS AND MOTIONS
18        v.                                         TO DISMISS AND FOR
                                                     SUMMARY JUDGMENT**
    **JAMES E. TILTON, et al.,**
19
                                      Defendants.
20

21      TO PRO SE PLAINTIFF JUAN ANGEL MARTINEZ, JR.:

22      PLEASE TAKE NOTICE that Defendants Tilton, Scavetta, Horel, Silva, Vanderhoofven,

23  McGuyer, Enos, Barneburg, Countess, Milligan, and Estes (Defendants) move under Federal

24  Rule of Civil Procedure 12(b)(6) to dismiss Martinez's claims concerning notice of confiscated

25  mail and the point-of-origin stamping policy, on the grounds that Martinez fails to allege any

26  constitutional violation.

27      In addition, Defendants move for summary judgment under Federal Rule of Civil Procedure

28  56 on the grounds that:  (1) there is no genuine issue as to any material fact; (2) there was no

Defs.' Mots. Dismiss & Summ. J.                          *Martinez v. Tilton, et al.*
                                                          C 07-4684 CRB (PR)

violation of Plaintiff's First Amendment rights; and (3) Defendants are entitled to qualified immunity because their actions were lawful.

The dispositive motions are based on this notice of motions and motions, the accompanying memorandum of points and authorities, the supporting declaration, all pleadings, exhibits, and papers on file in this action, and any other matters properly before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Statement of Issues

Inmate Martinez is a prison-gang associate held by the California Department of Corrections and Rehabilitation (CDCR) in the Security Housing Unit (SHU) at Pelican Bay State Prison (PBSP). CDCR reviews incoming inmate mail, and has confiscated three letters addressed to Martinez. CDCR also stamps pages of outgoing inmate mail from the SHU to help prevent prison-gang members from communicating with each other despite isolation in a SHU.

1.    Does Martinez state a constitutional claim by asserting that he received notice of three confiscated letters on the wrong form?

2.    Does Martinez state a constitutional claim by asserting that his outgoing mail is stamped?

3.    Was Martinez notified of three incoming letters that were addressed to him and confiscated, and was he able to appeal their confiscation to a prison official other than the one who made the initial confiscation decision?

4.    Does PBSP's policy of stamping outgoing inmate mail from the SHU reasonably relate to penological concerns, where the stamps help prevent prohibited inmate-to-inmate communications that threaten prison security and the lives of correctional officers and other inmates?

5.    Are Defendants entitled to qualified immunity from Martinez's First Amendment claims concerning the sending and receipt of mail?

//

//

Defs.' Mots. Dismiss & Summ. J.

*Martinez v. Tilton, et al.*
*C 07-4684 CRB (PR)*

1

## Statement of the Case

2      Juan Angel Martinez, an inmate with CDCR, filed a complaint with seventeen causes of

3 action on September 11, 2007 for alleged constitutional violations involving his sending and

4 receipt of mail. (Compl.; Order of Service 2–3.) He proceeds pro se in this action under 42

5 U.S.C. § 1983, and seeks injunctive relief and damages. (Compl. 1, 3P–R.)

6      On January 11, 2008, this Court found that Martinez arguably stated First Amendment

7 claims concerning his right to send and receive mail, and to appeal the confiscation of his mail to

8 an official other than the one who made the initial confiscation decision. (Order of Service 2–3.)

9      Defendants here file their motions to dismiss and for summary judgment.

10

11

## Statement of Facts

12      1.    Inmate Martinez is a prison-gang associate of the Mexican Mafia, and held by the

13 CDCR in the SHU at PBSP. (*See* Decl. Roost Supp. Defs.' Mot. Summ. J. (Decl. Roost) ¶ 7, Ex.

14 F-1–2.)

15      2.    CDCR has a four-level administrative-appeals process that permits its inmates to

16 grieve "any departmental decision, action, condition, or policy which they can demonstrate as

17 having an adverse affect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The four

18 levels of appeal include: (1) an informal level, (2) a first formal level of review, (3) a second-

19 level review to the institution head or designated representative, and (4) a final third-level appeal

20 to the Director of the CDCR or designated representative. *Id.* at § 3084.5. A decision at the

21 Director's level constitutes exhaustion of an inmate's administrative remedies. *Id.* at §

22 3084.1(a).

23      3.    Martinez has exhausted three administrative grievances concerning confiscation of

24 incoming correspondence, identified by appeal-log numbers C-06-02404, C-07-00012, and C-07-

25 00269. (Decl. Roost ¶¶ 3–5; Compl. 2(a).)

26      4.    Inmates may receive notice of confiscated correspondence on either a form 1819 or

27 128-B. (Decl. McGuyer Supp. Defs.' Mot. Summ. J. (Decl. McGuyer) ¶ 10.) The distinction is

28 that correctional officers provide notice on a form 128-B when the incoming mail also serves as a

Defs.' Mots. Dismiss & Summ. J.                                                 *Martinez v. Tilton, et al.*
C 07-4684 CRB (PR)

3

1 source item indicating prison-gang affiliation. (*Id.*) Specifically, a form 1819 includes

2 information identifying the sender and receiver, whether the mail is incoming or outgoing, and

3 why the mail is disapproved. (*Id.*) A form 128-B includes all the information on a form 1819,

4 and also adds further detail explaining why the letter implicates prison-gang association. (*Id.*)

5     5.    Martinez received confiscation notice of the letter addressed by administrative

6 grievance C-06-02404 on a form 1819, which was authorized by Correctional Captain Silva.

7 (*See* Decl. Roost Ex. B-5.) During the course of exhausting his administrative grievance,

8 Martinez was interviewed at the first formal level by Correctional Lieutenant Vanderhoofven (*id.*

9 Ex. B-1), and his second-level response was reviewed and signed by Warden Horel (*id.* Ex. B-

10 10–11).

11     6.    Martinez received confiscation notice of the letter addressed by administrative

12 grievance C-07-00012 on a form 128-B, which was authorized by Correctional Captain

13 McGuyer. (*See id.* Ex. C-9.) During the course of exhausting his administrative grievance,

14 Martinez was interviewed at the second formal level by Correctional Sergeant Barneburg, and the

15 second-level response was reviewed and signed by Warden Horel. (*Id.* Ex. C-3–5.)

16     7.    Martinez received confiscation notice of the letter addressed by administrative

17 grievance C-07-00269 on a form 128-B, which was authorized by Correctional Captain

18 McGuyer. (*See* Decl. Roost Ex. D-1; *see also* Compl. Ex. 45[1]/.) During the course of exhausting

19 his administrative grievance, Martinez was interviewed at the second formal level by

20 Correctional Sergeant Barneburg, and the second-level response was reviewed and signed by

21 Warden Horel. (Compl. Ex. 43–44.) Ultimately this administrative grievance was reviewed at

22 the Director's Level by Appeals Examiner K.J. Allen and approved by the chief of the Inmate

23 Appeals Branch. (*See* Decl. Roost Ex. D-1.)

24     8.    Prison-gang participants at PBSP, like Martinez (*id.* ¶ 7), are typically housed in a SHU

25 to isolate them from the general population and limit their communications, which—if they

26

27

---

28     1. Defendants refer to precise page numbers from the Complaint's exhibit, which spans forty-six pages, to ensure accurate identification of documents.

Defs.' Mots. Dismiss & Summ. J.

*Martinez v. Tilton, et al.*
C 07-4684 CRB (PR)

1    reached other inmates—could greatly endanger security by, for instance, coordinating and

2    commanding assaults on correctional officers and other inmates (Decl. McGuyer ¶ 3).

3        9.    PBSP's SHU consists of twenty-two units, and members of the same prison gang will

4    typically be split among the units to prevent intra-gang communication. (*Id.*)

5        10.    SHU inmates were circumventing the prohibition on inmate-to-inmate communications

6    through two methods: (1) addressing correspondence to fictitious destinations, and placing

7    another inmate's address as the return address for the bounced mailing; and (2) using

8    intermediaries outside of prison to re-route all or parts of mail to other inmates. (*Id.* ¶ 5.)

9        11.    Members of the Institutional Gang Investigations (IGI) Unit determined that the best

10   method to stop these communications was to mark every page of outoing PBSP-SHU mail, along

11   with the envelope itself, with information identifying the mail's point of origin. (*Id.* ¶ 6.)  These

12   identifying stamps indicate origin not just from PBSP's SHU, but also from which of the twenty-

13   two PBSP SHU units the mail originated. (*Id.*)  The stamp therefore enables correctional officers

14   checking incoming inmate mail to easily note if any part of a correspondence illicitly originated

15   from an inmate at PBSP SHU, or even from a different unit within the PBSP SHU, cutting off

16   inter-unit PBSP SHU communications as well. (*Id.*)

17       12.    The IGI Unit's goal was to accomplish this point-of-origin marking in as clear but non-

18   invasive a manner as possible. (*Id.*)  For example, the point-of-origin stamp is in red ink, which

19   contrasts with the prison-issued black ink used in correspondence by inmates. (*Id.* ¶ 7.)  In

20   addition, CDCR procured self-inking stamping tools to apply a uniform and minimal amount of

21   red point-of-origin ink, to prevent smearing. (*Id.* ¶ 8.)  Also, the red point-of-origin stamps are

22   typically applied in a diagonal angle, to contrast further with inmates' black-ink writing. (*Id.* ¶

23   7.)  In addition, confidential inmate mail, like legal correspondence, is only stamped on the

24   envelope. (*Id.*)  Finally, photographs and drawings are only stamped on their back to avoid

25   defacing the artwork. (*Id.* ¶ 8.)

26       13.    The point-of-origin stamping policy has had a successful impact in stopping prison-

27   gang communication over the approximately eighteen months that the policy has been in place.

28   (*Id.* ¶ 9.)

Defs.' Mots. Dismiss & Summ. J.                                                   *Martinez v. Tilton, et al.*
                                                                                          C 07-4684 CRB (PR)

5

1

<u>**Argument**</u>

2

**I.**

**MARTINEZ FAILS TO RAISE ANY CONSTITUTIONAL CLAIM.**

3

4

    **A.   Martinez's Claim Concerning Three Confiscated Letters Must Be Dismissed Because No Constitutional Claim Is Raised.**

5

6

    An inmate, when his mail is confiscated, is constitutionally entitled to notice of the

7

confiscation decision, and to appeal the decision to a prison official other than the one making

8

the initial confiscation decision. *See Frost v. Symington*, 197 F.3d 348, 353–54 (9th Cir. 1999);

9

*Krug v. Lutz*, 329 F.3d 692, 697–98 (9th Cir. 2003). Martinez fails to state a First Amendment

10

claim concerning the confiscation of three letters because his allegations concern only whether

11

CDCR officials provided notice on the proper form—not whether notice itself was absent, or

12

unappealable to an official other than the one making the initial confiscation decision. (Compl.)

13

Because Martinez fails to make any constitutional claims concerning confiscated mail, these

14

claims must be dismissed.

15

    **B.   Martinez's Claim Concerning the Point-of-Origin Stamping Policy Must Be Dismissed Because No Constitutional Claim Is Raised.**

16

17

    Inmates have a First Amendment right to send mail, *see Witherow v. Paff*, 52 F.3d 264, 265

18

(9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)), but that issue is not

19

before the Court. Rather, Martinez discusses allegations concerning CDCR's policy at PBSP to

20

place point-of-origin stamps atop inmate correspondence. Martinez does not assert that he

21

cannot send mail, or that his outgoing mail is illegible because of the point-of-origin stamp. Any

22

harm to Martinez's outgoing mail is de minimus, and the allegations here do not rise to a First

23

Amendment violation. His claim concerning the point-of-origin stamping policy, therefore, must

24

be dismissed.

25

//

26

//

27

28

Defs.' Mots. Dismiss & Summ. J.

*Martinez v. Tilton, et al.*
C 07-4684 CRB (PR)

## II.
### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THE POINT-OF-ORIGIN STAMPING POLICY REASONABLY RELATES TO LEGITIMATE PENOLOGICAL PURPOSES.

**A.    Legal Standard for Summary Judgment.**

Federal Rule of Civil Procedure 56 provides that a summary-judgment motion shall be granted where no genuine issue exists concerning any material fact, and the moving party is entitled to judgment as a matter of law.  The Supreme Court has stated that Rule 56(c) mandates summary judgment against a party who fails to sufficiently establish an element essential to the party's case, and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The non-moving party's failure of proof on an essential element of its claim renders all other facts immaterial.  *Id.*

The Supreme Court has made clear that a party opposing a summary-judgment motion must affirmatively show that a dispute about a material fact is genuine, such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  This standard requires that if any evidence produced in opposition to Defendants' motion is "merely colorable" or "not significantly probative," Defendants' motion must be granted.  *Id.* at 249; *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288 (9th Cir. 1987).  An opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324.  Plaintiff may not rest on his complaint when opposing a summary-judgment motion.  *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968).

The undisputed evidence here, even when viewed in the light most favorable to Plaintiff, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986), compels resolution of all factual issues solely in Defendants' favor.

**B.    Legal Standard for Prison-Mail Claims.**

Although the Supreme Court generally does not consider outgoing inmate mail a serious threat to internal prison order, *Thornburgh v. Abbott,* 490 U.S. 401, 411 (1989), CDCR's stamping policy here is concerned with regulating and eradicating prison mail that is intentionally

Defs.' Mots. Dismiss & Summ. J.                                          *Martinez v. Tilton, et al.*
                                                                          C 07-4684 CRB (PR)

1 re-directed back into the prison and which, indeed, very directly affects prison security. (Decl.

2 McGuyer ¶¶ 5–6.) Therefore, the *Turner* reasonableness standard must be applied to the point-

3 of-origin stamping policy at issue here. *See Thornburgh*, 490 U.S. at 413.

4       In cases involving facial challenges to the constitutionality of a prison regulation that

5 infringes on a constitutional right, the relevant inquiry is whether the regulation is reasonably

6 related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The

7 Supreme Court's four-pronged test to determine whether a prison regulation or policy is

8 reasonably related to legitimate penological interests is: (1) whether there is a valid, rational

9 connection between the policy and the legitimate governmental interest put forward to justify it;

10 (2) whether there are alternative means of exercising the right; (3) whether the impact of

11 accommodating the asserted constitutional right will have a significant negative impact on prison

12 guards, other inmates, and the allocation of prison resources generally; and (4) whether the policy

13 is an exaggerated response to the prison's concerns. *Turner,* 482 U.S. at 89–90.

14       Where the government identifies a legitimate objective for the regulation under the first

15 prong of this test, the burden is on the inmate to refute the presumption that the challenged

16 regulation is rationally related to that objective. *Turner*, 482 U.S. at 89; *Mauro v. Arpaio*, 188

17 F.3d 1054, 1060 (9th Cir. 1999); *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999).

18       Under the second prong, the "alternate means test" assesses "only the degree to which a

19 regulation impinges upon a prisoner's asserted right." *Friedman v. Arizona*, 912 F.2d 328, 332

20 (9th Cir. 1990).

21       **C.   The Policy Under Which Outgoing SHU Mail Receives a Place-of-Origin Stamp**
22            **Meets the *Turner* Test.**

23       **1.   The Point-of-Origin Stamping Policy Protects Lives and Prison Security.**

24       The first *Turner* prong—whether there is a valid, rational connection between the policy and

25 the legitimate governmental interest put forward to justify the policy—is met here. Prison-gang

26 participants like Martinez are housed in the PBSP SHU to isolate them and limit their

27 communications, which—if they reached other inmates—could greatly endanger security by, for

28 instance, coordinating and commanding assaults on correctional officers and other inmates.

Defs.' Mots. Dismiss & Summ. J.                                    *Martinez v. Tilton, et al.*
                                                                    C 07-4684 CRB (PR)

8

1  (Decl. McGuyer ¶ 3.) PBSP's SHU consists of twenty-two units, and members of the same

2  prison gang will typically be split among the units to prevent intra-gang communication. (*Id.*)

3       But SHU inmates were circumventing the prohibition on inmate-to-inmate communications

4  through two methods: (1) addressing correspondence to fictitious destinations, and placing

5  another inmate's address as the return address for the bounced mailing; and (2) using

6  intermediaries outside of prison to re-route all or parts of mail to other inmates. (*Id.* ¶ 5.)

7       To prevent these prohibited communications, PBSP officials decided to mark every page of

8  outgoing PBSP-SHU mail, along with the envelope itself, with a stamp identifying the mail's

9  point of origin. (*Id.* ¶ 6.) These stamps indicate origin not just from PBSP's SHU, but also from

10 which of the twenty-two PBSP SHU units the mail originated. (*Id.*) The stamp therefore enables

11 correctional officers checking incoming inmate mail to note if any part of a correspondence

12 illicitly originated from an inmate at PBSP SHU, or even from a different unit within the PBSP

13 SHU, cutting off inter-unit PBSP SHU communications as well. (*Id.*) This point-of-origin

14 stamping policy has had a successful impact in stopping prison-gang communication over the

15 approximately eighteen months that the policy has been in place. (*Id.* ¶ 9.)

16      In sum, CDCR officials identified a life-threatening security risk—intra-prison-gang

17 communications—and effectively neutralized the risk with the point-of-origin stamping policy.

18 Thus, the burden is on Martinez to refute the presumption that the challenged regulation is

19 rationally related to its objective. *Turner*, 482 U.S. at 89; *Mauro*, 188 F.3d at 1060; *Frost*, 197

20 F.3d at 357.

21      **2.    Martinez Can Still Send Legible Correspondence.**

22      Under the second *Turner* prong, Martinez's First Amendment means of correspondence is

23 substantively unaffected by the point-of-origin stamping policy. The point-of-origin stamps are

24 applied in an overt but non-invasive manner. (Decl. McGuyer ¶ 6.) For example, the stamp is in

25 red ink, which contrasts with the prison-issued black ink used in correspondence by inmates. (*Id.*

26 ¶ 7.) To provide further contrast, the red stamps are typically applied in a diagonal angle. (*Id.*)

27 To prevent smearing, the prison procured self-inking stamping tools that apply a uniform and

28 minimal amount of red point-of-origin ink. (*Id.* ¶ 8.) In addition, confidential inmate mail, like

Defs.' Mots. Dismiss & Summ. J.                                    *Martinez v. Tilton, et al.*
                                                                   C 07-4684 CRB (PR)

1  legal correspondence, is only stamped on the envelope. (*Id.* ¶ 7.) And to avoid defacing artwork,

2  photographs and drawings are only stamped on their back. (*Id.* ¶ 8.)

3      Given that Martinez can still send clear and legible mail despite ubiquitous point-of-origin

4  stamps, the Court "should be particularly conscious of the 'measure of judicial deference owed to

5  corrections officials . . . in gauging the validity of the regulation.'" *Turner*, 482 U.S. at 90 (citing

6  *Pell v. Procunier*, 417 U.S. 817, 827 (1974)). Because Martinez's First Amendment right to

7  send mail is unhindered by point-of-origin stamps, the second prong under *Turner* is amply met.

8      **3.**   **Disallowing Point-of-Origin Stamps Will Endanger Lives and Prison Security, and Leave CDCR No Alternative Means of Stopping Prison-Gang Communications.**

9  

10      The third *Turner* prong is met because no other method of stopping prison-gang

11  communications will be as effective as the currently utilized point-of-origin stamping policy.

12  Specifically, CDCR had already prohibited unapproved inmate-to-inmate correspondence, but

13  CDCR's methods of scrutiny were still circumvented by prison-gang participants before enacting

14  the point-of-origin stamping policy. (*See* Cal. Code Regs. tit. 15, § 3139; Decl. McGuyer ¶ 5.)

15  Because disallowing the stamping policy would have a significant "ripple effect" by endangering

16  the lives of correctional officers and inmates alike (*see* Decl. McGuyer ¶ 9), the Court should be

17  particularly deferential to the carefully enacted security steps taken here by CDCR. *Turner*, 482

18  U.S. at 90.

19      **4.**   **Applying Point-of-Origin Stamps Is Not an Exaggerated Response to Life-Threatening Prison-Gang Communications.**

20  

21      Finally, CDCR's point-of-origin stamping policy meets the fourth *Turner* prong because

22  there is no ready alternative that can defeat circumvention of inmate-to-inmate correspondence.

23  Again, CDCR had already prohibited unapproved inmate-to-inmate correspondence before

24  enacting the point-of-origin stamping policy, but CDCR's methods of scrutiny were still

25  circumvented by prison-gang participants. (*See* Cal. Code Regs. tit. 15, § 3139; Decl. McGuyer ¶

26  5.)

27  //

28  //

**III.**
**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST THE CLAIMS CONCERNING CONFISCATED MAIL BECAUSE MARTINEZ RECEIVED NOTICE OF CONFISCATION, AND APPEALED THE ISSUE TO PRISON OFFICIALS OTHER THAN THE ONES MAKING THE INITIAL CONFISCATION DECISIONS.**

Martinez exhausted three administrative grievances concerning confiscation of incoming correspondence, identified by appeal-log numbers C-06-02404, C-07-00012, and C-07-00269. (Roost Decl. ¶¶ 3–5; Compl. 2(a).) He is constitutionally entitled to notice of the withheld mail, *see Frost v. Symington*, 197 F.3d 348, 353–54 (9th Cir. 1999), and to appeal the confiscation decision to an official other than the one who made the initial confiscation decision, *see Krug v. Lutz*, 329 F.3d 692, 697–98 (9th Cir. 2003).

**1.    Appeal C-06-02404 Concerned Noticed Confiscation of a Letter, and Was Heard by Prison Officials Other Than Those Making the Initial Confiscation Decision.**

Appeal C-06-02404 concerned not whether Martinez received notice of a confiscated mailing, but whether the decision to confiscate was correct, and whether he was able to sign off on this notice to direct prison officials how he wished the mailing to be disposed. (*See* Decl. Roost Ex. B-1–2.) But Martinez is only constitutionally entitled to notice of withheld mail, which he received. *See Frost* 197 F.3d at 353–54.

Martinez additionally appealed the issue to several prison officials who were not involved in the initial confiscation decision, including PBSP Warden Horel, who reviewed and signed the second-level response personally. (*See* Decl. Roost Ex. B-10–11.) Martinez therefore raises no constitutional claim concerning appeal C-06-02404.

**2.    Appeals C-07-00012 and C-07-00269 Each Concerned Noticed Confiscation of a Letter, and Were Heard by Prison Officials Other Than Those Making the Initial Confiscation Decision.**

Appeals C-07-00012 and C-07-00269 primarily concerned whether Martinez is entitled to notice of confiscated mail through a form 1819 rather than 128-B. (*See* Decl. Roost Exs. C-1–9, D-1; Compl. Ex. 23–27, 43–44, 46. ) But Martinez is only entitled to notice of confiscated mail. *See Frost*, 197 F.3d at 353–54. The specific form providing this notice is irrelevant, especially where—as here—the form 128-B provides the same information as a form 1819, along with

Defs.' Mots. Dismiss & Summ. J.                                              *Martinez v. Tilton, et al.*
                                                                                              C 07-4684 CRB (PR)

11

1  additional information.  (*See* Decl. McGuyer ¶ 10.)

2      Martinez's appeals C-07-00012 and C-07-00269 were addressed by several prison officials

3  who were not involved in the initial confiscation decision, including PBSP Warden Horel, who

4  reviewed and signed the second-level response personally.  (*See* Decl. Roost Exs. C-3–5, D-1;

5  Compl. Ex. 43–44.)  Martinez therefore raises no constitutional claim concerning appeal C-07-

6  00012 and C-07-00269.

7                                    **IV.**

       **DEFENDANTS MERELY INVOLVED IN THE ADMINISTRATIVE-**

8         **GRIEVANCE PROCESS ARE NOT LIABLE FOR ANY**

       **CONSTITUTIONAL HARM .**

9

10      Of all the Defendants on whom the Court ordered service—Tilton, Scavetta, Horel, Silva,

11  Vanderhoofven, McGuyer, Enos, Barneburg, Countess, Milligan, and Estes (Order of Service 3;

12  Compl. 1(a))—some were named by Martinez merely because they took part in review of his

13  administrative grievances at issue here.  Martinez mentions the following Defendants only in the

14  context of his administrative-grievance process:  Vanderhoofven (compl. 3B ¶ 20), Barneburg

15  (*id.* ¶ 26, 3C ¶ 36), and Enos (*id.* 3C ¶ 30).

16      Martinez has no constitutional right to a prison administrative-appeal system.  *See Mann v.*

17  *Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  A prison official's involvement and actions in

18  reviewing or investigating a prisoner's administrative appeal cannot serve as the basis for

19  liability under a § 1983 action.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003);

20  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).  Thus, Defendants Vanderhoofven,

21  Barneburg, and Enos must be dismissed.

22                                   **V.**

    **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

23

24      **A.**   **The Standard for Finding Qualified Immunity.**

25      The defense of qualified immunity protects "government officials . . . from liability for civil

26  damages insofar as their conduct does not violate clearly established statutory or constitutional

27  rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800,

28  818 (1982).  The rule of qualified immunity "provides ample protection to all but the plainly

Defs.' Mots. Dismiss & Summ. J.                                    *Martinez v. Tilton, et al.*
                                                                   C 07-4684 CRB (PR)

1  incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495 (1991)

2  (citation omitted).

3       When a governmental official is accused of a constitutional violation, a particular sequence

4  of questions must be considered to determine if qualified immunity exits. *See Saucier v. Katz*,

5  533 U.S. 194 (2001). First, a court must ask: "Taken in the light most favorable to the party

6  asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

7  right?" *Id.* at 201. If no constitutional right was violated under the alleged facts, the inquiry ends

8  and defendants prevail. *Saucier*, 533 U.S. at 204.

9       If, however, a constitutional violation could be construed on a favorable view of the

10 opposing party's submissions, the next step is to determine whether the right was clearly

11 established. *Id.* at 201–02. The right's contours must be so clear that a reasonable official would

12 know that his actions violate that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The

13 relevant, dispositive inquiry in determining whether a right is clearly established is whether it

14 would be clear to a reasonable officer that his conduct was unlawful in the situation he

15 confronted." *Saucier*, 533 U.S. at 202. Officers can make mistakes about the facts requiring

16 confiscation of mail, or mistakes about the constitutionality of a new policy designed to protect

17 lives and prison security, yet they will still be protected by qualified immunity as long as they

18 acted reasonably under the circumstances. *Id.* at 205–06.

19      **B.   Martinez Has Not Alleged Violation of Any Constitutional Right.**

20      The first step under *Saucier* is to determine whether, taken in the light most favorable to the

21 party asserting the inquiry, the facts alleged show the officer's conduct violated a constitutional

22 right. *Saucier,* 533 U.S. 194. Defendants recognize that inmates have a First Amendment right

23 to send and receive mail, and to appeal confiscation of mail to an official other than the one

24 making the confiscation decision. As discussed above, however, Martinez has failed to show

25 how these rights were violated in this action. Under *Saucier*, this Court's inquiry should end

26 here.

27 //

28 //

Defs.' Mots. Dismiss & Summ. J.                                    *Martinez v. Tilton, et al.*
                                                                        C 07-4684 CRB (PR)

13

**C.    Defendants Are Entitled to Qualified Immunity Because It Would Not Have Been Clear to Reasonable Officials that Their Conduct Was Unlawful.**

Even were Martinez's allegations to establish a constitutional violation, Defendants would not clearly have known that such conduct was unlawful. *Saucier*, 533 U.S. at 202. Officers can make mistakes about the facts requiring a response, yet they will still be protected by qualified immunity as long as they acted reasonably under the circumstances. *Id.* at 205–06.

Even assuming that the policies and regulations at issue are unconstitutional, and also that Defendants' conduct violated Martinez's First Amendment rights, Defendants are still entitled to qualified immunity because it would not have been clear to a reasonable official in any of Defendants' situations that the conduct at issue was clearly unlawful.

To begin with, Defendants Vanderhoofven, Barneburg, and Enos are only named in this suit because of their work in reviewing Martinez's administrative grievances. (*See* Argument IV above.) There is no constitutional right to a prison administrative appeal system. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). And a prison official's involvement and actions in reviewing or investigating a prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). With the law so established, it is impossible to say that a reasonable official in any of Defendants' positions would have known that mere involvement in reviewing Martinez's administrative grievances was unlawful.

Further, the remaining Defendants, responsible for confiscating three letters addressed to Martinez or for designing and employing the point-of-origin policy, all had their decisionmaking and rationale reviewed through CDCR's four-level administrative-grievance system to exhaustion. And each grievance was ultimately denied at the Director's Level of review, after a full record was established before CDCR and interviews were conducted. (Compl. Ex. 14, 26, 40, 46.) Martinez fails to point out where a reasonable official in any of Defendants' positions would have thought they were clearly engaged in unlawful conduct violating an inmate's constitutional rights.

//

Defs.' Mots. Dismiss & Summ. J.                    *Martinez v. Tilton, et al.*
                                                    C 07-4684 CRB (PR)

14

## Conclusion

Martinez fails to raise any First Amendment claim in his complaint and, as such, this suit must be dismissed.

Even if a First Amendment claim could be construed from the complaint, Martinez was not deprived of any First Amendment rights because the point-of-origin stamping policy at issue serves legitimate penological interests. And Martinez's claims revolving around confiscated mail concern receipt of confiscation notice on the wrong form—not whether he failed to receive notice at all, or whether he could not appeal the decision to alternative prison officials.

Lastly, in accord with the above, Defendants are entitled to qualified immunity because they did not violate Martinez's First Amendment rights—or, if they arguably somehow did, a reasonable official in Defendants' position could have thought that their conduct was lawful.

//

//

1     Accordingly, Defendants respectfully request that this Court grant Defendants' motion to

2  dismiss or, in the alternative, their motion for summary judgment, and dismiss the entire action

3  as to all Defendants.

4

5        Dated: May 20, 2008

6                      Respectfully submitted,

7                      EDMUND G. BROWN JR.
                        Attorney General of the State of California

8                      DAVID S. CHANEY
                        Chief Assistant Attorney General
9

                      FRANCES T. GRUNDER
10                     Senior Assistant Attorney General

11                     THOMAS S. PATTERSON
                     Supervising Deputy Attorney General

12

13

14

15                     KENNETH T. ROOST
                     Deputy Attorney General
                     Attorneys for Defendants Tilton, Scavetta, Horel, Silva,
16                   Vanderhoofven, McGuyer, Enos, Barneburg, Countess, Milligan,
                   and Estes

17

18  40238842.wpd
19  SF2008400483

20

21

22

23

24

25

26

27

28

Defs.' Mots. Dismiss & Summ. J.                                    *Martinez v. Tilton, et al.*
                                                               C 07-4684 CRB (PR)

16

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:     **Martinez v. Tilton, et al.**

Case No.:       **C 07-4684 CRB (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar, at which member's direction this service is made. I am 18 years of age or
older and not a party to this matter. I am familiar with the business practice at the Office of the
Attorney General for collection and processing of correspondence for mailing with the United
States Postal Service. In accordance with that practice, correspondence placed in the internal
mail collection system at the Office of the Attorney General is deposited with the United States
Postal Service that same day in the ordinary course of business.

On <u>May 20, 2008</u>, I served the attached

**DEFENDANTS' NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT**

**DECLARATION OF KENNETH T. ROOST IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**
(WITH EXHIBITS)

**DECLARATION OF K. MCGUYER IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**
(WITH EXHIBITS)

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid,
in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate
Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Juan Angel Martinez, Jr.
H-93376
Pelican Bay State Prison
P. O. Box 7500
Crescent City, CA 95532
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **May 20, 2008**, at San Francisco, California.

_____
M. Xiang
Declarant

_____
Signature