1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  KENNETH T. ROOST, State Bar No. 231444
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7    Telephone: (415) 703-5824
     Fax: (415) 703-5843
8    Email: Ken.Roost@doj.ca.gov

9  Attorneys for Defendants Tilton, Scavetta, Horel,
   Silva, Vanderhoofven, McGuyer, Enos, Barneburg,
10 Countess, Milligan, and Estes

11

12              IN THE UNITED STATES DISTRICT COURT

13           FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15

| | |
|---|---|
| **JUAN ANGEL MARTINEZ, JR.,** | C 07-4684 CRB (PR) |
| Plaintiff, | **DECLARATION OF K. MCGUYER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **JAMES E. TILTON, et al.,** | |
| Defendants. | |

21      I, K. MCGUYER, declare as follows:

22      1.    I am a Defendant in this case, and employed by the California Department of

23 Corrections and Rehabilitation (CDCR) as a Correctional Captain at Pelican Bay State Prison

24 (PBSP), a position I have held for approximately four years.  I have been employed by CDCR for

25 approximately eighteen years in total, all at PBSP.  As a Correctional Captain, I am currently in

26 charge of an entire facility, and previously headed the Institutional Gang Investigations (IGI) Unit

27 for two years, where I became particularly familiar with the policies and regulations impacting

28 inmates within the Secure Housing Unit (SHU), including the point-of-origin stamping policy as

Decl. McGuyer Supp. Defs.' Mot. Summ. J.                                    *Martinez v. Tilton, et al.*
                                                                            C 07-4684 CRB (PR)

1  well as the issuance of a form 1819 or 128-B to notice inmates of confiscated mail.  I am

2  competent to testify to the matters set forth in this declaration, and if called upon to do so, I

3  would and could so testify.  I submit this declaration in support of Defendants' summary-

4  judgment motion.

5      2.    PBSP is a high-security prison, housing some of the most-dangerous convicted

6  criminals in California.  The SHU is the highest-security inmate housing at PBSP, and arguably

7  throughout all of the state's prisons.  The SHU is reserved for inmates whose conduct

8  particularly endangers the security of the prison and general inmate population.

9      3.    Validated prison-gang members are usually housed in the SHU to isolate them from the

10  general population and limit their communications, which—if they reached other inmates—could

11  greatly endanger security by, for instance, coordinating and commanding assaults on correctional

12  officers and other inmates.  PBSP's SHU consists of twenty-two units, and members of the same

13  prison gang will typically be split among the units to prevent intra-gang communication.

14  Plaintiff Martinez is one such prison-gang associate who is housed in PBSP's SHU, in part to

15  limit his potentially dangerous communications with other inmates.

16      4.    Attached to this declaration as Exhibits B through D are three memoranda explaining a

17  policy at issue in Martinez's complaint, whereby outgoing mail from SHU inmates is stamped to

18  identify the mail's point of origin from PBSP's SHU.  Attached as Exhibit A is a declaration

19  from the custodian of records to authenticate these memoranda.

20      5.    The November 13, 2006 memorandum attached as Exhibit B is signed by me, and

21  explains the rationale underpinning the policy to place point-of-origin stamps on outgoing SHU-

22  inmate mail.  Specifically, the IGI Unit—which I headed for two years—learned that SHU

23  inmates were circumventing the prohibition on inmate-to-inmate communications through two

24  methods:  (1) addressing correspondence to fictitious destinations, and placing another inmate's

25  address as the return address for the bounced mailing; and (2) using intermediaries outside of

26  prison to re-route all or parts of mail to other inmates.

27      6.    Because any internal prison-gang communication threatens lives and security, a high

28  priority was placed on stopping these methods of communication—with minimum impact on any

Decl. McGuyer Supp. Defs.' Mot. Summ. J.                    *Martinez v. Tilton, et al.*
                                                            C 07-4684 CRB (PR)

1    inmates' constitutional rights. Members of the IGI Unit determined that the best solution was to

2    mark every page of outgoing PBSP-SHU mail, along with the envelope itself, with information

3    identifying the mail's point of origin. These identifying stamps indicate origin not just from

4    PBSP's SHU, but also from which of the twenty-two PBSP SHU units the mail originated. The

5    stamp therefore enables correctional officers checking incoming inmate mail to easily note if any

6    part of a correspondence illicitly originated from an inmate at PBSP SHU, or even from a

7    different unit within the PBSP SHU, cutting off inter-unit PBSP SHU communications as well.

8    The IGI Unit's goal was to accomplish this point-of-origin marking in as clear but non-invasive a

9    manner as possible.

10       7.    Attached as Exhibit C is a November 13, 2006 memorandum explaining that the point-

11    of-origin stamp is in red ink, which contrasts with the prison-issued black ink used in

12    correspondence by inmates. This red/black contrast in color both emphasizes the point of origin,

13    while keeping the substance of the correspondence entirely legible and clear to anyone who may

14    receive and read the correspondence. The red point-of-origin stamps are typically applied in a

15    diagonal angle, to contrast further with inmates' black-ink writing. Also, confidential inmate

16    mail, like legal correspondence, is only stamped on the envelope.

17       8.    Attached as Exhibit D is a December 20, 2006 memorandum explaining improvements

18    in the point-of-origin stamping policy, enacted to ensure the clarity and legibility of inmate

19    correspondence. Specifically, PBSP announced plans to procure self-inking stamping tools to

20    apply a uniform and minimal amount of red point-of-origin ink, to prevent smearing. These self-

21    inking stamping tools have been in use since 2007. In addition, the memorandum clarifies that

22    photographs and drawings will only be stamped on their back to avoid defacing the artwork.

23    Photographs and drawings still require a point-of-origin stamp because messages could be

24    encoded in invisible ink or other means that could bypass the scrutiny of correctional officers.

25       9.    In sum, the point-of-origin stamping policy was carefully enacted to protect prison

26    security and the lives of correctional officers and other inmates by putting a stop to methods of

27    prohibited prison-gang communications, while still enabling SHU inmates to send perfectly

28    legible mail. The point-of-origin stamping policy has, furthermore, had a successful impact in

Decl. McGuyer Supp. Defs.' Mot. Summ. J.
*Martinez v. Tilton, et al.*
C 07-4684 CRB (PR)

1  stopping prison-gang communication over the approximately eighteen months that the policy has

2  been in place.

3      10. Finally, to address Martinez's concern about notice of confiscated mail, inmates

4  typically receive notice of confiscated incoming mail on a form 1819. But correctional officers

5  will provide notice on a form 128-B when the incoming mail also serves as a source item

6  indicating prison-gang affiliation. The form 128-B provides all the information noted on a form

7  1819, including the sender and receiver, whether the mail is incoming or outgoing, and briefly

8  why the mail is disapproved. In addition, the form 128-B provides further details explaining why

9  the letter implicates prison-gang association.

10      I declare under penalty of perjury that the foregoing is true and correct. Executed at

11  Crescent City, California.

12

13  May 19, 2008
    Date

14

15

16  40254077.wpd
    SF2008400483

K. MCGUYER

17

18

19

20

21

22

23

24

25

26

27

28

Decl. McGuyer Supp. Defs.' Mot Summ. J.
        *Martinez v. Tilton, et al*
        C 07-4684 CRB (PR)