IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JUAN ANGEL MARTINEZ, JR.,<br><br>                      Plaintiff,<br><br>v.<br><br>JAMES E. TILTON, et al.,<br><br>                      Defendants. | C 07-4684 CRB (PR)<br><br>**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT** |

Defendants Tilton, Scavetta, Horel, Silva, Vanderhoofven, McGuyer, Enos, Barneburg, Countess, Milligan, and Estes (Defendants) filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff Martinez failed to state any First Amendment claim, and for summary judgment under Federal Rule of Civil Procedure 56 on the grounds that: (1) there is no genuine issue as to any material fact; (2) there was no violation of Plaintiff's First Amendment rights; and (3) Defendants are entitled to qualified immunity because their actions were lawful.

A. **Analysis Concerning the Confiscated Letters.**

Martinez's allegations surrounding three confiscated letters concern the type of form on which he received notification of the confiscation, and whether the confiscation decision was well-founded. An inmate, when his mail is confiscated, is constitutionally entitled to notice of the confiscation decision, and to appeal the decision to a prison official other than the one

making the initial confiscation decision. *See Frost v. Symington*, 197 F.3d 348, 353–54 (9th Cir. 1999); *Krug v. Lutz*, 329 F.3d 692, 697–98 (9th Cir. 2003).

Here, Martinez admits receiving notification of the confiscation decision; his contentions about whether this notification must be through a form 128-B or 1819 are irrelevant and do not address a constitutional harm. Further, the administrative-appeals record attached to Martinez's complaint shows that Martinez successfully appealed the confiscation decision to prison officials other than the initial decisionmakers—indeed, Defendants Vanderhoofven, Barneburg, and Enos were only named by Martinez because of their involvement in reviewing his administrative grievances. (*See* compl.)

In sum, Martinez fails to state a First Amendment claim concerning the three confiscated letters, and any claims related to these confiscated letters are dismissed.

**B.   Analysis Concerning the Point-of-Origin Stamping Policy.**

   **1.   Martinez Fails to Allege a First Amendment Harm.**

Martinez's remaining claim is that his prison's policy of stamping the pages of outgoing inmate mail from the Security Housing Unit violates his constitutional rights. Inmates have a First Amendment right to send mail, *see Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)), but that issue is not before the Court.

Martinez never alleges that he cannot send mail; rather, he takes issue with a policy to mark his mail with a point-of-origin stamp. Martinez does not allege that this stamping process makes his outgoing correspondence illegible. The Court's analysis of this issue could well cease here, as Martinez has apparently failed to make out a First Amendment claim concerning his right to send mail.

   **2.   The Point-of-Origin Stamping Policy Is Reasonable.**

Were the Court to indulge Martinez further and assume the stamping policy infringed on the First Amendment right to send mail, the evidence proffered by Defendants' motion for summary judgment makes clear that the prison's policy to stamp outgoing inmate mail from the Security Housing Unit does not violate any First Amendment right.

The prison's stamping policy is concerned with regulating and eradicating prison mail that

is intentionally re-directed back into the prison and which, indeed, very directly affects prison security. (Decl. McGuyer Supp. Defs.' Mot. Summ. J. ¶¶ 5–6.) Therefore, the *Turner* reasonableness standard must be applied to the point-of-origin stamping policy at issue here. *See Thornburgh*, 490 U.S. at 413. Under *Turner*, the relevant inquiry is whether the regulation is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Courts apply a four-pronged test to determine whether a prison regulation or policy is reasonably related to legitimate penological interests: (1) whether there is a valid, rational connection between the policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether the impact of accommodating the asserted constitutional right will have a significant negative impact on prison guards, other inmates, and the allocation of prison resources generally; and (4) whether the policy is an exaggerated response to the prison's concerns. *Turner*, 482 U.S. at 89–90. These prongs all favor a finding that the stamping policy at issue is reasonable and constitutional.

First, prison officials identified a serious security risk—intra-prison-gang communications—and effectively neutralized the risk with the point-of-origin stamping policy, which enables prison officials to determine whether inmates are boomeranging their outgoing mail back into the prison through intermediaries or false return-to-sender addresses. (*See* Decl. McGuyer Supp. Defs.' Mot. Summ. J.) Thus, the burden is on Martinez to refute the presumption that the challenged regulation is rationally related to its objective. *Turner*, 482 U.S. at 89; *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999); *Frost*, 197 F.3d at 357. This he does not do.

Second, Martinez's First Amendment means of correspondence is substantively unaffected by the point-of-origin stamping policy. The point-of-origin stamps are applied in a clear but non-invasive manner. (*See* Decl. McGuyer Supp. Defs.' Mot. Summ. J. ¶¶ 6–8.) For instance, the prison applies red-ink stamps, at a diagonal angle, atop correspondence penned in prison-issued black ink. The prison also procured self-inking red stamps to reduce possible smear. And photographs and artwork are only stamped on their back.

The third *Turner* prong is met because previous methods used by the prison to stop prison-

[Proposed] Order Granting Defs.' Mots. Dismiss & Summ. J.    *Martinez v. Tilton, et al.*
C 07-4684 CRB (PR)

3

1 | gang communications were ineffective, leading to creation of the point-of-origin stamping policy.
2 | (*See* Decl. McGuyer Supp. Defs.' Mot. Summ. J. ¶ 5.)
3 |     Finally, the point-of-origin stamping policy meets the fourth *Turner* prong because there is
4 | no ready alternative put forth by Martinez, or imagined by the Court, that can defeat
5 | circumvention of inmate-to-inmate correspondence.
6 |     Because the point-of-origin stamping policy closely relates to a legitimate penological
7 | purpose, Defendants are entitled to summary judgment.
8 |     In sum, Defendants have not infringed on any constitutional right of Martinez's, and they
9 | are entitled to dismissal of the claims against them. Alternatively, Defendants are also entitled to
10 | summary judgment on the claims against them because the undisputed evidence shows that
11 | Martinez has suffered no constitutional violation.
12 |     IT IS SO ORDERED.

Dated: _____

                                        HONORABLE CHARLES R. BREYER
                                        United States District Judge

40254080.wpd
SF2008400483

[Proposed] Order Granting Defs.' Mots. Dismiss & Summ. J.     *Martinez v. Tilton, et al.*
    C 07-4684 CRB (PR)