JUAN ANGEL MARTINEZ, H-93376
P.O. BOX 7500  C-7-214
CRESCENT CITY CA. 95532
PLAINTIFF IN PRO·PER.

FILED

08 JUN 20 PM 1:52

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

JUAN ANGEL MARTINEZ, JR.,

                    PLAINTIFF,

   V.

JAMES E TILTON, ET.al.,

          DEFENDANTS.

C 07-4684 CRB (PR)

PLAINTIFF'S BRIEF IN OPPOSITION TO

DEFENDANTS' MOTIONS TO DISMISS

AND FOR SUMMARY JUDGEMENT

(i)

# MEMORANDUM OF POINTS AND AUTHORITIES

## PLAINTIFF'S STATEMENT OF DISPUTED FACTUAL ISSUES.

DEFENDANTS' HAVE MOVED FOR DISMISSAL ON PLAINTIFF'S CLAIM CONCERNING THREE CONFISCATED LETTERS, AND CLAIM CONCERNING POINT OF ORIGIN STAMPING POLICY: THEY HAVE ALSO MOVED FOR SUMMARY JUDGMENT ON POINT OF ORIGIN STAMPING POLICY, AS WELL AS CLAIMS ON CONFISCATED MAIL. PLAINTIFF SUBMITS THE FOLLOWING LIST OF GENUINE ISSUES OF MATERIAL FACT THAT REQUIRE THE DENIAL OF THE DEFENDANT'S MOTIONS FOR DISMISSAL AND SUMMARY JUDGMENT.

1. Whether the plaintiff stated a Constitutional claim by asserting that Defendants' violated his rights by using wrong form for confiscating letters, and for not fully filling out proper form.

2. Whether the plaintiff stated a Constitutional claim by asserting that because defendants did not follow their own rules, his letter was lost or destroyed.

3. Whether the plaintiff stated a Constitutional claim by asserting that his outgoing mail was censored, and illegible because of the underground policy of stamping mail.

4. Whether the plaintiff stated a Constitutional claim by asserting that three incoming letters were arbitrarily confiscated, and defendants used wrong form to notify him of confiscation not approved by CDCR, and PBSP Operational policies.

5. Whether plaintiff stated a Constitutional claim by asserting that appeal to a prison official other than the one who made the initial confiscation decision were adequate, because of form used was not lawful, and whether review was fruit from the poisonous tree.

4) Whether plaintiff stated a Constitutional claim by asserting that Defendants real reason for utilizing 128Bs to deny

1. Mail, was to circumvent due process, and retain plaintiff in SHU
2. for six more years without recourse.
3.     5. whether plaintiff stated a Constitutional claim by asserting
4. that defendants stamping all outgoing SHU Mail was really to
5. ostracize prisoners, and was not related to any penological concern
6. that was legitimate.
7.     6. whether plaintiff asserted a Constitutional claim on each
8. of the Defendants for their knowledge of rules, and their failure
9. to perform their duties according to the law, when they had actual
10. and Constructive knowledge of the violations. And due to their
11. illegal practices they are not entitled to qualified immunity.
12.     7. whether plaintiff asserted a Constitutional claim on defendan-
13. ts for implementing underground policies regarding incoming and
14. outgoing mail.

                    Plaintiff Martinez In Pro-Se.

(iii)

Juan Angel Martinez
H-93376 C-7-214
P.O. Box 7500
Crescent City Ca. 95532.

FILED

08 JUN 20 PM 1:52

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION.

JUAN ANGEL MARTINEZ, JR.,

                    PLAINTIFF,

        V.

JAMES E. TILTON, ET AL.,

                    Defendants,

C 07-4684 CRB (PR)

PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANTS MOTIONS. AND
MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT.

STATEMENT OF THE CASE;

    Plaintiff is a Pro se prisoner at Pelican Bay State Prison (PBSP) who has filed a Pro-se Civil Rights Complaint Under 42 USC § 1983, And 28 USC § 1367. Alleging Unjustified interference with his incoming And Outgoing Mail, based On Alleged prison and street gang association Plaintiff Claims that the repeated denial, Loss, Censoring, and defacement of his Mail, On the basis of erroneous and unreliable information, has Amounted to Violations of his Federal and State Constitutional Rights.

    Plaintiff Demands declatory, injunctive. And Monetary relief, Alleging First and Fourteenth Amendment violations. Plaintiff Refutes Defendants Allegations that he did not....

1) Raise any Constitutional Claims. (Dismissal)
2) That Defendants "Point-of-origin" stamping policy relates to a Legitimate Penological Purpose(s) (Dismissal)
3) That Defendants are Entitled to Summary Judgment against claims Concerning Confiscated Mail.

1

4) That defendants involved in The Administrational Grievance process are not liable for any Constitutional harm.

5) That Defendants are Entitled to Qualified immunity.

Thus, Defendants Motions To Dismiss, And Motions for Summary Judgment Must Be DENIED.

## ARGUMENT
I

A.   THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE A MOTION TO DISMISS FROM BEING GRANTED FOR DEFENDANTS.

A Motion to Dismiss is Only to be granted, if the record before the Court Shows "That there is no genuine issues As to any Material fact, and that the moving Party is entitled to a judgment As a Matter Of Law" Rule 56(c) Fed. R. Civ. P. A "Material" fact is One that "Might affect the Out Come Of the Suit Under Governing Law".... Anderson v. Liberty Lobby, INC. 477, US. 242, 248 (1986)

The genuine issue of Material fact here is whether the Plaintiff raised any Constitutional Claims, to state a Claim Under 42 U.S.C. §1983,. A Plaintiff Must allege two essential elements; (1) That a right Secured by the Constitution or Laws of the United States was Violated, And (2) That the alleged Violation was Committed by a Person acting Under the Color of state Law. West v Atkins 487 US. 42, 48 (1988)

These Two elements were addressed and Satisfied in plaintiffs Complaint Via his administrative appeals (CDC-Forms 602). (See Exhibits (1)-(3), (13)-(15), And (40)-(42). Attached to plaintiffs Complaint Appeal Log Numbers C-06-02404, C-07-00012, and C-07-00269.

2

1. prisoners enjoy a first Amendment right to send and recieve mail.
2. See, Witherow v Paff 52 F.3d 264, 265 (9th Cir 1995) (citing
3. Thornburgh v Abbott, 490 US 401, 407 (1989) prisoners also have a
4. Liberty interest in the reciept of Mail, which triggers procedural
5. due process guarantees. Krug v Lutz 329 F.3d 692, 696-97. (9th cir
6. 2003). If Prison Officials withhold Mail, A prisoner has a Due process
7. right to recieve Notice that his incoming Mail is being withheld. see
8. frost v Symington 197 F.3d, 348, 353-4. (4th cir 1999) See also
9. Prison Legal News v Cook, 238 F3d, 1145, 1152-3 (9th Cir 2001)
10.    Defendants Would have the Court believe that plaintiff fails to
11. state a first Amendment claim Concerning the Confiscation of three
12. Letters. This is not the Case plaintiff stated first And Fourteenth
13. Amendment Claims.
14.    plaintiff filed an appeal On 9-19-06 Log # C-06-07404 (see Compla-
15. int Exhibits 1-3.) The basis for Appeal Was Unjustified Confiscation
16. Of letter based On personal prejudice, whims, and beliefs, Of Mail infrac-
17. tions. That Amounted to an "illigitimate purpose" And is "Capricious
18. interperence" With plaintiffs First Amend rights (see Parish v Johnson
19. 800 F2d 600, 604 (6th Cir 1986). CDCR and PBSP, has a policy of
20. and Concerning Denial Of Mail CCR. sec 3147 (b)(A)(B). And PBSP.
21. OP.# 205, 222. (Operational Procedure) (See Exhibit(s), A & B attatched)
22. And under those guidelines my first amend And fourteenth amend
23. rights to due process Were Violated see (Exhibits in Complaint 6, 8)
24. At the first And Second Level Of Review Appeal # C-06-02404
25. Defendants Acknowledged that Due process rights were Violated, and
26. that training Of Staff to properly administer CDC 1819s would be
27. Conducted. Further plaintiff requested Comphensation for loss/missplace-
28. ment Of his Letter.
    Plaintiff filed two Other Seperate Appeals relating to the Confis-
cation Of his incoming Mail and alleged that PBSP and Defendants
Violated his Constitutional rights by Using new policy of giving
128-B Forms, instead of the CDCRs Mandated CDCR 1819 per
CCR 3131 and PBSPs OP# 205, 222. (See attached Exhibit(s) A, B)

3

1. Thus violating plaintiffs Liberty interests, due process rights, and
2. unjustified interference with first Amend rights (see Complaint Exhibits
3. 13-15 and 40-42.). Plaintiff has a Liberty interest in the reciept
4. of his Mail sufficient to trigger procedural due process guarantees.
   Krug v Lutz, 329 F3d .692, 697-8 (4th Cir 2003) See Board of
5. Regents v Roth 408 US. 564, 569 (1972) -(Such guarantees Only
6. Apply when a Constitutionally protected Liberty or Property interest
7. is at stake).

   The Supreme Court has held that the interest of prisoners and
8. their Correspondents in Uncensored Communication by Letter, grounded
9. as it is in the first Amendment, is plainly a Liberty; interest within
10. the Meaning of the fourteenth amendment even though qualified
11. Of necessity by the Circumstance of imprisonment. (Martinez
12. 416 US at 417-18.) This Liberty interest attaches not Only to
13. Communications by letter, but also to a prisoners reciept of Subscription
14. publication. See Prison Legal News v Cook 238 F3d 1145. See also
    Morrisson v Hall 261 F3d 896, 906 (9th Cir 2001)
15. The Supreme Court has repeatedly recognized that restrictions on
16. the delivery of mail burden an inmates ability to exercise his or
17. her first Amendment rights.

18. Plaintiff has a Liberty interest of "real Substance" because Defend-
19. ants have placed 128Bs in plaintiffs Central file Alleging gang
    Association, and activities. They have started to use these 128Bs
20. to Deny Mail, And Also Use the same 128B As A Source item
21. indicating prison gang affiliation (see Declaration McGuger Pg.
22. 4, #10.) These 128Bs will be Used to retain plaintiff in
23. SHU. in his upcoming D.R.B. (Dept, Review, Board) For inactive
24. status. To Deny plaintiff from getting out of PBSP SHU.
    And will extend his Confinement in SHU For Six (6) More years
25. or indefinately. This is the true Purpose behind Defendants
26. Using 128Bs. in Order to retain prisoners in The SHU
27. without proper Due process guarantees and protections provided
28. in Madrid v Gomez and the more recent Castillo settlement.

4

1. Plaintiff has a Liberty interest of "Real Substance" (Sandin v Conner
2. 515 US. 472) Because his extended SHU Sentence places an atypical
3. or Significant hardship on plaintiff in relation to the ordinary incidents
4. of prison life  Miller v. Stewart 231 F 3d 1248 (9th cir 2000).
5. Comer v Stewart 215 F 3d, 910, 915. (9th cir 2000), and Madrid v Gomez
6. 889. F SUPP 1230. Courts in the 9th Circuit have ruled that
7. prolonged Segregation in the SHU implicates a state protected Liberty
8. interest. Koch v Lewis Case No CIV 90-1872-PHX-ROS (JBM)
9. Dated Sept 4. 2001 Pg. 11 " We hold that Kochs [Plaintiff] five
10. And One half years Confinement under extreme Conditioning of SHU
11. with no end in Sight gives rise to a protected Liberty interest
12. under Sandin. Also William v Cambra 1988 WL 387617 at *2
13. ND. Cal 1988 held that indeterminate Sentences implicate due process
14. Protections plaintiff has been in PBSP SHU five and a half years
15. And is undergoing an indeterminate SHU Term. plaintiff is eligible
16. for release in 2009. However by defendants using 128 Bs to deny
17. mail, and placing 128Bs in Central file violating CCR 3147(5) A) B
18. CCR 3131, OP# 205 and OP # 222, They will further Due process
19. Violations by keeping plaintiff in SHU Maybe perpetually. based
20. upon these uncorroborated and unjustified 128-Bs.

18. Plaintiff has a Liberty interest of "real Substance" because his SHU
19. term directly and inevitably affects the duration of a Sentence Once
20. Confined to the SHU; Duration of His Sentence is prolonged because
21. Calif. Board of Prison/Parole Terms (BPT) refuses to parole any
22. gang associate Or prisoner in SHU See Medina v Gomez 1997
23. US Dist Lexis 12208 at *3 ND. 1997, finding Conditions in
24. PBSP SHU to be atypical and Significant deprivation as required
25. Under Sandin and that SHU Prisoners are not given parole
26. as a Matter of Course. Given plaintiffs SHU Sentence his prison
27. term is prolonged Because of His gang Validation and resulting
28. extended SHU Sentence Because of incorrect use of 128 Bs
   regarding mail, Make him ineligible for parole under rules set by
   Californias B.P.T. [and due to Consecutive determinate Sentence,

5

1. plaintiff is Unable to earn Work time Credits that Would reduce
2. his Sentence] This Liberty interest is Of real Substance because
3. his SHU Confinement prevents him from the possibility of parole
   release from prison. Jones V. Moran 900 F SUPP 2d 719 ND. OH,
4. 2002.
5.    Plaintiff refutes Defendants allegation that he fails to raise
6. any Constitutional claim... Thus, Defendants Motion to Dismiss
7. Must be denied... As plaintiff Clearly raised Genuine issues of
   fact, And plaintiff raised first And fourteenth amendment
8. Constitutional Claims.
9.

10.
11. B.  PLAINTIFFS CLAIM CONCERNING POINT OF ORIGIN
12.     STAMPING POLICY MUST NOT BE DISMISSED...
13.     BECAUSE CONSTITUTIONAL CLAIMS ARE RAISED,
        AND THERE ARE GENUINE ISSUES OF MATERIAL FACT.
14.

15.
16.    Prisoners enjoy a first Amendment right to Send And recieve
17. Mail See Witherow V. Paff 52 F 3d 264, 265 (9th Cir 1995)
18. Citing Thornburgh V. Abbott 490 US 401, 407 (1989) A Prison
19. may None-the-less adopt regulations or practices Which may
    impinge On a prisoners first amend rights as long as the
20. regulations or practices are "Reasonably related to a legitimate
21. Penological interest" Turner V Safely 487 US 78, 89 (1987) In the
22. instant Case, plaintiff asserts that Stamping policy is Not
23. reasonably related to legitimate Penological objectives, and in fact
24. is an exaggerated response.
25.    The issue Of a right to Send Uncensored Mail is precisely
    is what is before this Court. See Procunier V Martinez 416 US. 396
26. Plaintiff asserts that Stamping Of all prisoners Mail in effect, Censors
27. alters, and defaces Prisoners Communications and Correspondence with
28. Thornburgh V. Abbott. 109 SCT 1892  Further Per Turner V Safely

6

1. 482 US. 78.) Non Prisoners, Violating freedom Of Speech per the
2. first And fourteenth amendment (See Exhibit(s) 22-25 complaint)
3. Plaintiff in fact does assert that his out going mail is illegible
4. because of point-of-origin stamp and defaces Mail/Correspondence
Thornburgh v Abbott 109 sct 1892

5. Plaintiff Asserts That 1.) no rational Connection exists between
6. this "Stamping policy" and legitimate penological interest, Also
7. Safeguards are already in place to prevent Mail Circumvention.
8. 2.) Even "if" There was a legitimate Penological interest behind
9. this Underground Policy. Per CCR 3331 "before implementation
10. and revision is made to an Approved plan of Operation Concern-
11. ing Mail, This plan will require the directors approval before imple-
12. mentation" and per CCR 3130, Which States in part that Sending
13. Of Mail will be Uninhibited. it is abundantly Clear that Defendant
14. K. McGuyer, Was the Author Of Stamping policy and was allowed
15. to implement this policy with the approval of Defendant R. Horal
(warden) Defendant Scavetta (associate warden). See Turner V.
Safely 482 US. 78.

16. There is no reason why a smaller Stamp Could not be Utilized,
17. And be placed On the reverse Side Of Mailings. However the
18. Procedures already in place nullify the Use of this offensive
19. Stamp. Inmates are required to put their Cell numbers, CDC #s,
20. And Housing Units on all envelopes Of their Mailings (See PBSP
21. OP # 205 pages 8,9 marked Defendants 8,9, K). Or Exhibits
22. A-3, A4 Herein.... (A 3,4) A Bold Stamp Underneath the return
23. address repeating the same information is redundant and Vindictive
further it Stigmatizes prisoners in SHU.

24. 3) The impact Of this Underground policy adds to the Workload
25. Of Staff Unnecessarily and Costs a Significant amount of money
26. to purchase Stamps and a Constant supply of ink for 22 housing
Units

27. 4) The Policies and procedures already in effect that Mandates
28. That all prisoners place their Cells and housing Units, CDC #s.

7

1. as well as full name, is self evident that this policy is not
2. reasonable (See Exhibits pg 29 in plaintiffs Complaint) see.
3. Iron eyes v. Henry 907 F2d 810, 813. 8th Cir 1990 (citing Turner:)
4. As in the instant Case prison officials there insisted that they had
5. a legitimate penological interest in Curtailing gang activity. However
6. the District Court Made a factual finding that this legitimate Pend-
7. ogical interest was not the Motivation for officials actions.
8. The Court (District ct) held the officials proffered justification for
9. their actions was pretextual and therefore in violation of prisoners
10. Civil rights.. As it is in the instant case.
11. The true Purpose of the "point of origin" stamping policy is to
12. further isolate and ostracize prisoners in the SHU. There already
13. exists a certain stigma that Correspondants with prisoners exper-
14. ience, this bold stamping only exacerbates this Sentiment, and
15. Causes loved ones and friends to question why all their mail is
16. stamped, and leads them to presume that prisoner is Suspected of
17. illicit activities. In Defendant McGoyers Declaration he indicates
18. that "Stamping policy has had a Successful impact on stopping prison
19. gang Communication, Since the Eighteen Months it has been in place"
20. (P.g 3-4, Declaration McGoyer) However he provides no proof
21. of this Supposed Success. It should also be noted that in Defen-
22. dant McGoyers Declaration (P.g 2. #3) He indicates that Members
23. of the Same prison gang will typically be split among Units to
24. prevent intra gang Communication... It May interest the Court
25. to Know that Since Feburary 2006. All Suspected Members of
26. all Californias Prison Gangs or Suspected influential associates were
27. Moved, and re housed in PBSP'S Housing Units "D" 1 – "D" 4. These
28. prisoners are isolated from all other prisoners in the SHU. and
even have their own visiting hours. As well as Special gang
investigators assigned to each housing Unit (D1-D4), to process
their Mail. It begs the question... why would the Defendants
place all the individuals whom they have labeld as influential
in the Same four housing units, where they can Communicate

8

1. when they have stated that their intent was to stop intra-gang
2. communication? The logical explanation of this supposed success in defea-
3. ting "Boomerang" Mail and Circumvention of Mail is the obvious fact
4. that since they are all housed together in the same units, there
5. no longer exists a need to "Boomerang" Mail, or use Mail to
6. communicate.
7.     Due to plaintiffs claims of Constitutional violations of his first and
8. fourteenth amendment rights. His claim concerning the point of origin
9. stamping policy. There fore Must Not Be Dismissed.

## II

THERE ARE GENUINE ISSUES OF MATERIAL
FACT THAT PRECLUDE SUMMARY JUDGMENT
FOR THE DEFENDANTS POINT-OF-ORIGIN
STAMPING POLICY CLAIM.

### A. LEGAL STANDARD FOR SUMMARY JUDGMENT

    Summary Judgment is to be granted only if the record before
the Court shows " That there is no Genuine issue as to any Material
fact and that the moving party is entitled to a Judgment as a matter
of law" Rule 56(c) Fed R.Civ.P., A "Material" fact is one that
"Might affect the Out Come of the suit under the governing law"
Anderson V Liberty Lobby, INC. 477 U.s. 242, 248 1986.
    The Declaration of the plaintiff and the defendants are squarely
Contradictory as to the validity of point-of-origin stamping policy
and whether it reasonably relates to a legitimate penological interest
or purpose, and whether it violates plaintiffs first and fourteenth
amendment Constitutional rights. plaintiffs claims must be const-
rued liberally, because of his pro se status. See Frost V Symington

9

1. 197 F 3d 358, (9th Cir 1999) Also Franklin v Murphy 745 F 2d, 1221,
2. 1235 (9th Cir 1984) (Holding that a pro-se Prisoner Litigants pleadings
3. must be Construed liberally on a Motion for Summary Judgment).
4. See also Karim-Panahi vs Los Angeles Police Dept. 839 F 2d 621,
5. 623 (9th Cir 1988) in Civil rights Cases were Plaintiff appears pro-se,
6. the Court must Construe the pleadings liberally and must afford
7. Plaintiff the benefit of any doubt). The Evidence here Viewed in light
8. Most favorable to the Plaintiff Compells the Court to deny Defendants
9. Motion for Summary Judgment.

## B. LEGAL STANDARD FOR PRISON MAIL CLAIMS.

The Supreme Court has held that the interest of prisoners
and their Correspondants in Uncensored Communication by letter
granted as it is in the First Amendment is plainly a liberty
interest within the meaning of the Fourteenth Amend, Even though
Qualified of necessity by the Circumstance of imprisonment
(King v. Lutz 329 F 3d 692, 697-8 (9th Cir 2003)
Martinez 416 US at 417-18 (This Liberty interest not only
attaches to Communications by letter but also prisoners receipt of
Subscription).

Before any Reasonableness Standard be applied Plaintiff asserts
that per CCR 3331 and PBSP OP # 205 (Prior to July 2007)
See Exhibit "B-1",... This Point of Origin Stamping Policy is
wholly Unlawful in that it was not approved by the director
of CDCR (now Secretary) And there for an Underground illegitimate
Policy. Thus Making this Policy Unlawful, whereby it Violates the
Due Process Clause of the US Constitution and Plaintiffs Liberty
interest based on the Const. See People v Ramirez 25 Cal 3d 260
(1979) See Also Toussaint v McCarthy 801 F 2d 1080, 1096, (9th
Cir 1986)

A statute, Rule or regulation Creates a liberty or Property interest,
if it limits the discretion of Officials see Quin v nix 983 F 2d 115,

1. 118. (8th Cir 1943). The Most Common way of limiting discretion is to
2. use "Explicitly Mandatory Language" in connection with requiring subst-
3. antive predicates. CCR° 3131 states that before any revision is made to
4. an approved plan, the plan "will" require the directors approval before
5. implementation. Here the published regulation, with force of law
6. triggers a liberty interest, and violates, due process of law.
7. See Miller v. Henman 804 F2d. 421, 424-427 (7th cir 1486)

8. It was only in March 9, 2007 where CDCR adopted new rules
9. Regulations, amending and Deleting Directors approval (see exhibit
10. B-1.) Plaintiffs Claims arose Before amended regulations, therefore
11. his procedural due process rights were violated.

12. In applying the turner reasonableness standard to the point of
13. Origin stamping policy, the Court should look at what the Court
14. in procunier v Martinez 416 US 396 said. Limitations of first
15. amendment freedoms Must be no greater than is necessary or essential
16. to the protection of a particular Govt interest involved. Thus a restr-
17. iction on inmate Correspondants, that furthers an important or
18. Substantial interest of penal administration will never the less be
19. invalid if its sweep is Unecessarily broad Id 418 414.

20. In the instant Case this stamping policy is Unecessarily broad
21. in that, All inmates in PBSP SHU have their Mail stamped Censored
22. and defaced whether they are validated prison gang Members,
23. Associates, Drop-outs, Deemed inactive, or if they are in Prote-
24. ctive Custody, Or in PBSP SHU for reasons other than being
25. involved in prison gang activities, such as violent acts, or violati-
26. ens of CCR Not related to gangs. Hence, this sweep is broad!
27. Whatever the status of a prisoners Claim to Uncensored Correspondence
28. with an Outsider, it is plain that plaintiff's interest is grounded in
the first amendment guarantee of freedom of speech And this does
not depend on whether the non Correspondent is the Author or
intended recipient of a particular letter. Thornburgh V Abbott 440 US,
425.

11

1.   The addressee as well as the sender of direct personal Correspondence
2. derives from the first and fourteenth amendment. A protection against
3. unjustified governmental interference with intended communication.
4. Abridgment of Communication is plain as Censorship. _Procunier v_
5. _Martinez_ 416 US. 408 9.
6.   Most recently "_Turner v Safely_ 482 us 78 Confirmed the vitality
7. of _Martinez_ for evaluating encroachments On the first Amendment
8. rights Of non-prisoners. The Court relied on 3 interim prisoners
9. rights cases to establish a reasonableness standard for reviewing
10. ym to ym Correspondence. Id at 89. But in its unanimous invalid-
11. ation of a restriction on inmate marriages, the Court acknowled-
12. ged that "because the regulation May entail a Consequential [496 US at
13. 497] restriction on the [const] rights of those who are not
14. Prisoners.
15.   Defendants, Stamping policy is shown with "Substantial Evidence"
16. to be an exaggerated response, to the problems the policy addresses
17. not only does the stamp make some Correspondence illegible, it also
18. defaces Cards, School and College papers/Documents it also attaches
19. a stigma to the mailing. Not only is Stamping policy an under-
20. ground policy, it is also an exaggerated response. And not related
21. to legitimate penological objectives. Other SHUs in CDCR, have
22. validated Gang members/Associates housed, yet PBSP is the only
23. SHU implementing this unlawful policy. Which proves its illegitimacy.

    **C. THE POLICY UNDER WHICH OUTGOING SHU
MAIL RECIEVES A PLACE OF ORIGIN STAMP
DOES NOT MEET THE TURNER TEST.**

    **1. THE POINT OF ORIGIN STAMPING POLICY IS AN
EXAGERATED RESPONSE AND DOES NOT PROTECT
LIVES NOR PRISON SECURITY**

  The first _Turner_ prong — Whether there is a valid, rational

1. Connection between the policy and legitimate governmental interest
2. put forward to justify the policy — ... is not met here.
3. Defendants indicate that "Prison gang participants are housed in PBSP SHU to isolate them and limit their communications which
4. if they reached other inmates could greatly endanger security."
5. "PBSP SHU consists of (22) Twenty-two units and members of
6. the same prison gang will typically be split among the units to
7. prevent intra-gang communication" (Id Decl. McGuyer. 3.)
8. As plaintiff stated in Argument I Part B pg. 8 lines 9-28,
9. and pg 9 lines 1-5. There is no longer a need for stamping policy. Further it is an exaggerated response. And does not save
10. lives nor prison security. Defendants fail to substantiate their
11. claims of reasonableness or proof of success.
12. Further, The stamp is not needed nor required in order that Correctional officers checking incoming mail to note if any part of the
13. Correspondence illicitly originated from an YM at PBSP SHU...
14. All SHU inmates are required per OP #205 pg. 8, 9 K.
15. (See attached Exhibits.) To place their full names, CDC #S.
16. Housing unit. and Cell #S. On the Top left corners of envelopes.
17. Correctional officers when picking up mail from each cell scan
18. the return address at prisoners doors to make sure the return
19. address matches that of the prisoners cell.
20. A stamp on the reverse side of letters or envelopes would
21. accomplish the same goal. and would not interfere with the
22. reading of letters or defacing cards, documents, etc.
23. The <u>Turner</u> Court stated that there must be a valid, rational
24. Connection between the prison regulation and legitimate govt interest
25. put forward to justify it. Id (quoting <u>Block v Rutherford</u> 468 US.
26. 576, 586. Specifically "the 'Logical' Connection between the regulation
27. and the asserted goal" Must not be so remote as to render the policy
28. "arbitrary or irrational" And the Governmental objective must be both "legitimate" And "neutral" <u>Turner</u> 482 US at 89-90 Here policy is
   unlawful. Arbitrary. and irrational.

13

## 2. WHETHER CORRESPONDENCE IS LEGIBLE WITH STAMP.

Under the Second Turner Prong, plaintiffs first Amendment Means of Correspondence is Substantially affected and Censored by the point of Origin stamping policy. Plaintiff directs the Court to his Exhibits in his Complaint. Pgs. 24, 25, 29, 30. and 34. It is evident that these Stamps are applied in an Overt and invasive Manner, Which Makes Some Correspondence Unreadable. By Mandating that these Offensive stamps be applied at a diagonal angle, This Only ensures the probability that More of the Correspondence will be exposed to Censorship, by Way of Defacing or Covering written words by pen or ink from greeting Cards, Birthday Cards, Holiday Cards, etc.

Turners Second Prong prompts the Court to examine whether there are alternative Means of exercising the right in Question. See Turner, 482 US. at 90. "In applying this factor "The right in question Must be viewed Sensibly and expansively". Mauro 188-F3d at 1061 (Quoting Thornburgh 490 US at 417)

There Clearly are alternative Means for prisoners at PBSP SHU to exercise their Constitutional rights, without being obstructed. A Smaller stamp applied to the reverse of all Correspondence, and Not at a diagonal angle would prevent Censorship, defacement, and Would not interfere with legibility of Correspondence.

Because plaintiffs first Amendment right to send Uncensored Mail is Obstructed by point-of-origin Stamp. The Second Prong Under Turner has not been Satisfied by defendants. (Thornburgh v Abbott. 490 US. 425), Procunier V Martinez 416 US. 408-9.

## 3. DISALLOWING POINT OF ORIGIN STAMPS WILL NOT ENDANGER LIVES, NOR PRISON SECURITY.

14

1. The third prong of _Turner_, requires the assesment of Conseq-
2. uences of accomodating the asserted Constitutional right would have
3. on guards and other inmates, and on the Allocations of Prison resources.
4. The alternative, of using a smaller stamp and Only on the reverse
5. side of envelopes, letters, or Cards, will be as effective as the
6. Current utilization of point of origin stamping policy. And no
7. "Ripple effect" would follow. the lives of Correctional Officers and
8. inmates alike will not be jeopardized. Also this Alternative, would not interfere with the reading of mail
9. Prison Authorities Cannot rely On General or Conclusory assertions
10. to Support their policies, and an evidentiary showing is required as
11. to each point (see _Walker V. Sumner_ 917 F2d at 387) In sum
12. the alternative will provide the Same protections and not jeopar-
13. dize Officers, nor inmates lives.

14.
15. 4.  APPLYING POINT OF ORIGIN STAMPS IS
16.     AN EXAGGERATED RESPONSE TO ALLEGED
17.     PRISON GANG COMMUNICATION
18.
19. The final Prong of _Turner_, Charges to explore whether the
20. prisoner Can articulate alternatives to the regulation at issue
21. that would fully accomodate, the prisoners rights at De Minimis
22. Cost to valid Penological interest. _Id. at 482, at 91_  The
23. existance of Obvious easy alternatives may be evidence that
24. the regulation is not reasonable, but is an "Exaggerated response"
    to prison Concerns _Id at 90._
25. It is clear that the Obvious alternative of using a small
26. less obtrusive stamp on the reverse side, (or even on the
27. face of letters but only On the upper corner left or right,
28. or left Column bracket as to not interfere with letter). ...

15

of all Mailings including envelopes, letters, Cards, etc. will still defeat Circumvention of Mail procedures, and Inmate to inmate Correspondence. Thus the point of origin stamping policy does not meet the fourth Turner prong standard. Because a ready alternative that protects first Amendment rights Can accomplish the same Prevention of Inmate to Inmate Correspondence.

## III

DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT AGAINST THE CLAIMS CONCERNING CONFISCATED MAIL BECAUSE DEFENDANTS DID NOT FOLLOW THEIR OWN RULES REGARDING MAIL AND NOTICE OF CONFISCATED MAIL, THEY HAVE DELIBERATELY VIOLATED PLAINTIFFS PROCEDURAL DUE PROCESS RIGHTS AND FIRST AMEND RIGHTS.

Plaintiff exhausted three Administrative grievances Concerning Confiscation of incoming Correspondence, identified by appeal Log #'S. C-07-00012, C-06-02404, and C-07-00269.

Plaintiff is entitled to Notice of Withheld Mail, See frost v Symington 197 F 3d. 348, 353-54. (9th Cir 1999) And to Appeal the decision to an official other than the One Who Made the initial Confiscation decision, See Krug v Lutz 329 F 3d 692, 697-98, (9th Cir 2003) Plaintiff also has a right to due process of Law, US Constitution, 14th Amend. Calif Const, article i sec 7. Prison Officials Cannot deprive prisoners of life, liberty, or property without due process of law, See Wolf v McDonnell, 418 US 539 (1974) Right to Procedural due process Means procedures are required before depriving Someone of life, liberty, or property. See, Logan v Zimmerman, Brush Co. 455, US. 422, 437. (1982)

16

1. right to free Speech and Association. US. Constitution first
2. Amendment. California Constitution article 1 sec 2,3. Prison
3. Officials Cannot abridge the freedom of Speech. See also <u>Turner</u>
<u>v Safely</u> 482 US. 78 (1987) Prison regulations may provide
4. prisoners with Such a right called a "State Created liberty
5. interest". See Madrid v Gomez 889 F Supp 1146, 1270-74 (ND. 1995)
6. "This" state Created liberty interest is Codified into California
7. Code Of Regulations 3131. and P.B.S.P. Operational Procedure(s) #S.
205, and 222. (# 205 v.I. Methods Section C. Attachment 1, CDCR.
8. Form 1819). CCR, 3147(B) 3147.(5)(A)B). 3130, 3136  Penal Code
9. 5058(a), 5054. (Calif p.c.).
10. Plaintiff has a right by way of Const, to have CDCR Follow its
11. own rules See <u>In Re. Reina</u> (1985) 171 Cal App 3d. 638, state
12. regulation including prison regulations, have the force Of Law. See
13. <u>Gomez</u> 889 F Supp 1146, 1271, F2 214. See also <u>Carmel v Texas</u>
(2000) 120 S.CT. 1620, 1623. See also <u>Vance v Barrett</u> (9th cir 2003)
14. 345 F 3d. 1083, 1094. Federal Standards are Turner, Mauro, and
15. frost. State standards, see inmate Bill of rights California penal
16. Code Sec 2600, and 2601. Defendants Cannot Circumvent rules
17. regarding "Notice", and then Claim to have provided notice. They
18. clearly went around established policy, rules, and procedures. therefore
their notice, Cannot be said to Coincide with due process, nor Can it
19. be said to be a "Notice".
20. The Court in <u>frost</u> 197 F3d 352,3. held that a pro-se litigants
21. Claims Must be Construed liberally. On a Motion for Summary Judgment
22. See <u>franklin v Morphy</u> 745 F2d 1221, 1235 (9th cir 1984) See also,
23. <u>Karim Panahi v Los Angeles Police</u> Dept. 839 F2d 621, 623. (9th cir 1988)
24. and that plaintiff enjoy the benifit of any doubt.
25. As in frost. plaintiff asserts that the following Claims Violated
his rights;
26. 1) Violation of the Hook Consent decree for failure to notify
27. Plaintiff adequately. (mandated use of CDCR 1819). and in accord-
28. ance with CDCRS. rules and policies and those of PBSPS. O.P.

17

1. That his Mail was being withheld, Late delivery of notices,
2. withholding Mail, and failure to preserve Letter.
3.    2). Violation of plaintiff's first amendment rights for with
   holding letters, And sending correspondents 128 Bs. indicating
4. that Mail is being stopped, and stating that they may be
5. subject to prosecution.
6.    3). Violation of plaintiffs fourteenth amendment due process
7. rights (property and liberty interests) for withholding letters.
8. without adequate or proper notice, and delivery of notice,
   after unreasonable delay, and losing/Destroying, Confiscated
9. letter that should have been preserved as evidence. Thus, not
10. allowing proper review by a prison official other than the
11. one Making the initial Confiscation decision.
12.   Plaintiff has a fourteenth amend Due process Liberty interest
13. in recieving notice that his incoming Mail being withheld by
14. prison Authorities. See Miniken v Walter 478 F Supp 1356.
    1363-64 (E.D. wash.1997) The court should consider whether
15. the defendants actions in not using the proper procedures for
16. notifying plaintiff of Confiscation Satisfied, Minimum proce-
17. dural safe guards required by the due process clause. See
18. Thornburgh v Abbott. 490 us.401, 406, (1989.) also CCR 3131,
    and OP #15 205, 222.
19.   Handed down just a few years after turner  Walter v Sumner
20. was one of the Courts earlier efforts to give greater Content
21. to the turner test. And as in Walter 917 F2d at 384. (walker
22. argued that the real purpose behind in that Case HIV testing
23. was to train Medical personell in administration of AIDs test)
24. Plaintiff there argues that the real purpose behind using
    CDC 128-B. Instead of CDCRs. Mandated 1819 form. (see Exhibits
25. A1,6,7,8,B,5). Is to Use these 128 Bs. as "Source items" for validation
26. purposes. And to extend SHU terms, indefinately, without having
27. to provide procedural due process per the Castillo settlement
28. And Madrid v Gomez. (see Declaration of Def. McGroger fg4 #10)

18

1. The Court noted in Walker that "if" that (training) was indeed
2. the purpose of the tests, walker " may well be correct" that
3. the policy did not further a legitimate penological objective,
   Id at 387. plaintiff asserts that in the instant case the
4. defendants real purpose is to circumvent established rules
5. in validation or in SHU retention hearings and use 128-B's
6. to retain prisoners in SHU indefinately with no way of
7. challenging 128-B's . Because according to defendants   "they
   are only required to provide notice". Thus according to the
8. defendants philosophy, 128-B's. cannot be challenged, and can
9. be used to retain prisoners in SHU indefinately. without due
10. process.

11.
12. i.) APPEAL C-06-02404 Concerned INAPPROPRIATE
       CONFISCATION OF LETTER; FAILURE TO FOLLOW
13.    NOTICE OF DISAPPROVAL FORM. (CDCR1819). AND
14.    OP #205, 222. DESTRUCTION OF LETTER. Not
15.    ALLOWING PROPER REVIEW TO AN OFFICIAL OTHER
16.    THAN THE ONE MAKING INITIAL DECISION.

17.
18. Appeal C-06-02404, Concerned the fact that the Notice of
19. Confiscation was incomplete, See Declaration, Roost EXHIBITS.
    B-1- B-11. Specifically first second, and third level reviews.
20. Where all reviewers acknowledged notice was incomplete and
21. also that staff would be trained to properly complete notices
22. of CDCR 1819's. By notice being incomplete it cannot be held
23. that this notice was adequate. And that notice was in line
24. with frost 197 F3d. at 353-54.
25. Further by losing or misplacing Mail/letter a prison official
    other than the official who made the initial decision to confisc-
26. ate letter were not able to adequately review this decision
27. as letter was by then lost. Appealing of confiscation decision
28. to official other than the one who made decision is not in

19

1. line with Krug v Lutz 329 F3d. 692, 697, 98. (4th cir 2003)
2. further by losing or destroying plaintiffs letter. Per due process
3. clause defendants have deprived me of Liberty, and property with-
4. out due process of law  See Camargo v. Walker 794 F. supp 65,
66, 67. (DRI 1992) See also People v Ramirez 25 cal 3d 260,
5. (cal 1974). (Under californias Constitution "freedom from arbitrary
6. adjudication is a substantive, element of Ones Liberty). Therefore
7. due process is required whenever government takes a "deprivatory
8. action" against an individual, regardless of whenever there is a liberty
or property interest. See Toussaint v McCarthy 801 F2d. 1080,
9. 1096, (9th cir 1986) Thus, plaintiff raises several - valid Const,
10. Claims Concerning Appeal C-06-02404. and is entitled to
11. Comphensation.

12. 
13.     2. APPEALS C-07-00012 and C-07-00269. EACH
14.        CONCERNED IMPROPER NOTICE OF CONFISCATION OF
15.        LETTER PER OP# 205 AND 222. AND BECAUSE
16.        OF THIS IMPROPER NOTICE, REVIEWS BY OFFICIALS
17.        OTHER THAN THOSE MAKING THE INITIAL CONF-
        ISCATION DECISION WERE NOT PROPER.
18. 
19. Appeals C-07-00012 and C-07-00269 primarily Concerned
20. whether defendants usage of CDC 128 Bs. instead of the
21. CDCRS, Mandated 1819 Form Concerning Notice of Confiscated
22. Mail is in violation of his first and fourteenth amendment
23. Constitutional rights.
24.     Essentially plaintiff Contends that defendants are intentionally
25. Circumventing, established mail procedures, violating CCR 3131,
And OP # 205, 222 by using a CDCR 128 B instead of a
26. CDCR 1819, This Circumvention of Mail procedure allows staff to
27. arbitrarily deny, and disapprove mail... under CCR 3147(6)
28. "Stopped" Mail Pertains to Mail that is being "Mailed by the Ym"

20

1. And not being recieved by the Ym. Mail that is being withheld
2. from an inmate that was sent from someone outside of prison
3. is under CCR. 3147(5)(A)(B). And under these guidelines/rules I
   should have been advised of withheld Mail via CDCR 1819.
4. (See Exhibits A&B) which notifies an inmate in a timely manner
5. (procedural safeguards), and provides an opportunity to appeal
6. disposition, However by, bypassing these procedures and utilizing
7. a CDC 128-B. Defendants can choose to delay notice of mail
   that is being withheld, it takes several days if not weeks for
8. a 128-B to be typed. thereby prohibiting yms from appealing
9. Actions within the 15 day time limitation per CCR 3147 (B)
10. vThis is precisely why the procedural safeguards are in place.
11. further there is nothing in the 128B. that gives plaintiff
12. enough information to Marshall an adequate defense. Also
    by placing these 128BS. in central files it allows CDC-PBSP
13. to hold plaintiff in SHU for six (6) More years without
14. due process and without proving evidence or corroboration for
15. defendants Suspicions, or without thoroughly investigating them.
16. Further More Because Defendants Did not follow their own
17. Rules... See Reina (1987) 171 Cal App 3d 638; Madrid v Gomez
18. 889. F Supp. 1146. 1271 FN. 219. (ND Cal 1995) and Barrett (9th cir
    2003) 345 F 3d 1083, 1094. Because defendants violated plaintiffs
19. due process rights under the California Constitution Article
20. I see 7. and Secs 2, 3. See also Wolf v McDonnell 418 US
21. 539. Logan v Zimmerman Brush Co. 455 US. 422, 437.
22. They cannot claim that reviews by officials other than the
23. ones Making the initial decisions were valid, and in accordance
24. with Krug v Lutz. Because reviews were tainted by fruit
    from the poisonous tree - in that since notice was invalid
25. and Contrary to CDCR, Rules. so then are the reviews.
26. Reviews underscore the willingness of Defendants to knowingly
27. violate plaintiffs rights. plaintiff raises several valid
28. Constitutional Claims. and is entitled to Comprehensation.

21

# IV

## DEFENDANTS INVOLVED IN THE ADMINISTRATIVE GRIEVANCE PROCESS ARE LIABLE FOR CONSTITUTIONAL HARM.

Plaintiff by way of CCR 3137(a) has a state created due process (procedural) interest to a prison appeal system. In regards to defendant Vanderhoofven, he directly participated in Constitutional violations (see Complaint Exhibit 1. pg. 2 sec "F"). his failure to act forthered Const violation  See williams v smith 781 F2d, 319, 323-4, (2d cir 1486)  Conner V Reinhard 847 F2d. 384. 397, (7th cir) and Greason V Kemp 891 F2d. 829. 836, (11th cir 1990)

A supervisor Can be held liable Under Sec 1983 when a reasonable person in the Supervisors position would have known that his conduct infringed on the Constitutional rights of plaintiff, and his conduct was causally related to the Constitutional violation Committed by his subordinate.

Further Defendants Vanderhoofven, Barneburg, and Enos are liable for Constitutional harm. Specifically Calif penal Code Sec - 2932, which imposes a Mandatory duty upon Defendants and each of them to afford due process protections to prisoners in Segregation. whereby defendants are liable pursuant to Calif law. Further More California penal Code Sec. 147 and 673 imposes a Mandatory duty upon defendants and each of them to treat plaintiff fairly and humanely and to protect plaintiffs physical and Mental well being.

Title 15. Calif Code of Regulations Sections 3131, 3147(B), 3130, 3136, 3084.5(b)(c). And PBSP OP. #S. 205, 222, imposes a Mandatory duty on defendants each of them to provide plaintiff with procedural protections when Conducting reviews. Defendants. Vanderhoofven, Barneburg and enos hold supervisory positions and have a duty to perform and execute their duties in a Manner Consistant with state and federal law. Supervisory defendants

22

have a duty to train and supervise subordinate employees. The policy of using 128 Bs and incomplete Notice of Confiscation of letter violated CDCRS Rules, and policys of PBSP SHU, which violated plaintiffs rights. Defendants were deliberately indifferent to the violations of plaintiffs due process rights. And defendants breached their duties to legally administer the prison, And to train and supervise subordinates, where plaintiffs rights were violated. As a result of these underground and unlawful regulations and policies Defendants had actual and Constructive Knowledge of the violations, and Did Nothing to prevent or Correct them. Thus Defendants Vanderhoofven, Barneburg and Enos, Must not be Dismissed.

# V

# DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

## A. THE STANDARD FOR FINDING QUALIFIED IMMUNITY

A Court required to rule Upon a Qualified immunity issue Must consider this threshhold question [Do] the facts Alleged Show the officers Conduct Violated a Constitutional right? (Saucier v Katz 533 US 194) The next Sequential step is to ask Whether the right Was Clearly established. This inquiry, it is Vital to note Must be Undertaken in light Of the Specific Context of the Case, Not as a broad general proposition.

The relevant Dispositive inquiry in determining whether a right is clearly established is whether it Would be clear to a reasonable Officer that his Conduct Was Unlawful in the situation he Confronted.

If the defendants Violate Clearly established Law" Of which a reasonable person Would have Known." it is no defense that they

23

1. Did not actually know about the law. See Elliot V. Thomas 937.
2. F2d 338, 344. (7th cir 1991). Chandler V. Baird 926 F2d 1057, 1060,
(11th cir 1991)
3.   The same is true of defendants who follow their superiors orders
4. s, or institutional policy. They are not immune if their conduct
5. was clearly unlawful. JHH. V O'Hara. 878 F 2d. 240, 244, N4.
6. (8th cir 1989) Walters V Western State hospital. 864 F2d at 700.
7. Also, Patzner V Burkett 779 F2d 1363, 1371 (8th cir 1985)
8.   Qualified immunity only protects officials from damage liability
9. in civil rights cases, unless they violate. "Clearly established,
10. statutory or constitutional rights of which a reasonable person
would have known. Harlow V. Fitzgerald 457 US. 800, 818. (1982)
11. In the instant case established statutory and constitutional
12. rights were violated and are not complex or difficult to interpret
13. (see Arguments I-IV. Herein.)

14.

15. **B. PLAINTIFF HAS ALLEGED SEVERAL VIOLATIONS**
16.    **OF HIS CONSTITUTIONAL RIGHTS.**

17.

18.   The first step under _Saucier_ is .. Do the facts show. the
19. officers conduct violated a constitutional right? As discussed
in Arguments 1-5, plaintiff asserts that defendants violated his
20. first amendment right to send and recieve mail by not abiding
21. by CDCRS. And PBSPS. Own Rules and policies regarding mail
22. procedures. In the Calif Code of Regulations and PBSP OP#S.
23. 205, 222. Thus violating plaintiffs constitutional right to Due
24. process of law.
25.   The next sequential step is to ask whether the right was
clearly established... and the relevant dispositive inquiry in deter-
26. mining whether a right is clearly established is whether it would be
27. clear to a reasonable officer that his conduct was unlawful in the
28. situation he confronted. it is clear from CDCR, CCR, and PBSP. OP #S

1. 205 and 222, that the rules and policies are clear, and not complex
2. and that the language is mandatory (see Exhibits A-B ) specifically
3. CCR 3131, and Op # 222. E. #8. Pg. 43. per CCR 3000.5 (c)
   "Shall" is mandatory, and op. #205. E #6. Pg. 4.
4. As discussed in arguments I-IV plaintiff has demonstrated that by
5. CDCRS Own rules/policys. and regulations , That Defendants have violated
6. his state created liberty interests. his procedural due process rights,
7. guaranteed by the 14TH Amendment, and his first Amendment
8. Constitutional rights. Under Saucier Defendants, are not entitled
   to qualified immunity. Because they knowingly and deliberately
9. Violated his Const Rights.

10.

11.

12. C. DEFENDANTS ARE NOT ENTITLED TO
13. QUALIFIED IMMUNITY BECAUSE IT WAS
14. CLEAR TO DEFENDANTS THAT THEIR
    CONDUCT WAS UNLAWFUL.

15.

16. Defendants Knowingly, deprived plaintiff of his Constitutional
17. rights, and were Complicit in violating his clearly defined procedural
18. due process Safeguards. The Majority of defendants in this suit,
19. are Supervisory officials, who have Specific Knowledge of CDCRS.
    Rules, and Knowingly Circumvented established procedures and protoc-
20. ols. Their failure to act, furthered plaintiffs Constitutional violat-
21. ions. See Williams v Smith 781 F2d. 319, 323, 24. (2nd cir 1986),
22. Conner v Reinhard 487 F2d 384, 397. (7th cir). and Greason v. Kemp.
23. 891 F2d 829, 836. (11th cir 1990).
24. Defendants are liable because when a reasonable person in the
25. Supervisors position would have Known that his Conduct infringed on
26. the Constitutional rights of plaintiff, and his Conduct was Causally
    related to the Constitutional violation. Defendants have a mandatory
27. duty per Calif Penal Code Sec 2932 to afford due process protect-
28. ions to prisoners in segregation (SHU). and CCR 3084.5 (b) c)

25

1. CCR. 3131, 3147, 3130, 3136, and OP.#s. 205, & 222. impose
2. a mandatory duty on defendants, each of them to provide plaintiff
3. with procedural protections, when conducting reviews. During reviews
4. Defendants failed to correct violations. (see 602 ym appeals in Complaint).
5. The fact that all plaintiffs appeals were exhausted to the Directors
6. level of review and Denied, shows the inadequacy of reviews and failure
7. of defendants to train. and supervise subordinates, they breached their
8. duties to legally administer, the prisons, and cdc's own rules. All defend-
9. ants had actual and constructive knowledge of violations, and did
10. nothing to prevent, or to correct the violations, Therefore Defendants
11. are not entitled to qualified immunity.

## CONCLUSION

PLAINTIFF RAISES FIRST AND FOURTEENTH
AMENDMENT CLAIMS IN HIS COMPLAINT.
AND IN HIS ADMINISTRATIVE APPEALS, AND
AS SUCH THIS SUIT MUST NOT BE DISMISSED.

Plaintiff was deprived of his first Amendment rights because
the point of origin stamp does not serve as a legitimate penological
interest, and it violates plaintiffs fourteenth amendment due process
rights established by CDCR, and PBSPs operational procedures.
Plaintiffs claims revolving around confiscated Mail concern
violations of his first amendment constitutional rights, And violations
of due process established by California Constitutional law, as well
as federal constitutional law.
Lastly, in accordance with above Defendants are not entitled
to qualified immunity because they violated plaintiffs first and
fourteenth amendment rights. They knowingly violated his

26

rights and were indifferent to his procedural due process protections. And Safeguards.

ACCORDINGLY, PLAINTIFF RESPECTFULLY REQUESTS THAT THIS COURT DENY, DEFENDANTS MOTION TO DISMISS, AS WELL AS THEIR MOTION FOR SUMMARY JUDGEMENT.

Dated: JUNE, 12, 2008

Respectfully Submitted,

Juan Angel Martinez JR.
Plaintiff. in Pro-Se.

27

# EXHIBIT  A

SHU - Corridor Entrance from the Back Dock

Level I - Work Change Area

4.    Inmates are responsible for placing sufficient postage on outgoing mail when using stamps. Returned mail due to lack of sufficient postage will void previous postage.

5.    Facility staff will issue contents only of envelopes made of plastic notear material cardboard and padded envelopes. The disallowed envelopes will be disposed of by facility staff.

6.    Each piece of incoming mail will be searched by housing unit staff for contraband and unauthorized items. Mail found to be unauthorized or to contain unauthorized items specifically prohibited in the OPs of this institution will not be issued to the inmate. Mail found to meet the criteria in the CCR, Title 15, Section 3006, will be presented to a Facility Captain for decision to its acceptability or denial. If denied, the Captain will authorize a Notification of Disapproval–Mail/Packages/Publications Form, California Department of Corrections and Rehabilitation (CDCR) 1819, (Attachment 1). The disallowed portion of the mail will be removed and the allowed portion of the mail will be issued.

7.    The Administrative Segregation Unit (ASU), Psychiatric Services Unit (PSU), and SHU mail will have all stamps, tape, plastic windows, and return address labels removed by housing unit staff before it is issued to an inmate. The return address label will be removed in front of the inmate, so he will know whom it was from and, if needed he can obtain the address.

8.    Facility staff will pick up their units reroute mail located in designated areas and deliver to the inmates in their facility housing unit or forward to the appropriate facility. Reroute mail for inmates housed at PBSP will not be returned to the Mailroom.

Designated reroute mail pick up areas are:

Level IV - Program Office

SHU - Corridor Control and Program Office

Level I - Work Change Area

F.    Processing Electronic Mail/Internet Mail

Inmates are allowed information from the Internet, but are not allowed direct access to the Internet.

All mail received will comply with the same standards as personal mail. All material must adhere to the mandates of the CCR, Title 15, Section 3006(c), Contraband, and the Administrative Bulletin No 02/04, Ban of Material Displaying Frontal Nudity. Legal websites and case law citing are available through the institution law library system.

A 1

Pelican Bay State Prison                                                                 Page 5
Operational Procedure No. 205                                                            July 2007
Inmate Mail

G.  Processing of Outgoing Mail

All outgoing regular mail will be picked up prior to 2200 hours by Third Watch Housing Unit staff.  All outgoing mail will be searched for contraband and scanned appropriately by First Watch Control Booth Officers before it is bundled and placed in the appropriate mailbag.  First Watch, Level I Housing Unit Officers will process the outgoing mail for their units and route the mail back to the Work Change area.  Mailbags from other areas will be picked up from the housing units by the designated staff listed below and taken to the Program Office for processing.

Level IV - Housing Unit Rover Officer

SHU - Search & Escort (S&E) Officer

The outgoing mail will be sorted according to the following categories with each category bundled together with a rubber band.  Rubber bands are available from the Facility Program Offices.

1.  Regular Envelope Mailings:  All envelope flaps will be opened and not tucked inside the envelope.  All envelopes will be sorted according to size, with letter and legal size envelopes in separate bundles.  All sizes will be bundled according to whether the letters are stamped, embossed, or indigent postage.  All letters in these categories that exceed one ounce in weight or are addressed to a foreign country will be separated and bundled separately.  All envelopes will be bundled so the postage is on top and in the same corner throughout the entire bundle.

2.  Postcards:  All postcards will be bundled so the postage is on top and in the same corner throughout the entire bundle.

3.  Mail Needing Additional Postage:  All mail requiring additional postage will be bundled separately.  This mail will be placed one on top of another with the address on top, the Trust Account Withdrawal Order, CDCR 193 (Attachment 2) showing, and the postage area in the same corner throughout the entire bundle.

4.  Institution Mail:  All institution mail for inmates or institution departments will be routed by staff within their facilities.  Mail going to the Mailroom for the Warden's Office, Inmate Trust Office, Receiving and Release (R&R), etc., will be bundled separately by area.

5.  Large Size Mailings:  Large homemade envelopes and manila envelopes will be sealed by tab or tape within each facility before being bundled.  Envelopes needing postage and envelopes with postage will be bundled separately.  This mail will be placed one on top of another with the address on top and the postage area in the same corner throughout the entire bundle.

6.  Bagging Outgoing Mail:  During inclement weather all outgoing mail will be placed into plastic bags to assure that the mail does not become damp during transportation.

A 2

The cost of postage for mailing Litigation mail will be charged against an inmate's trust account unless the inmate is indigent as defined by the CCR, Title 15, Section 3165(d), ". . . without funds at the time the material is submitted for mailing and remains without funds for 30 days after the document is mailed." Postage shall be provided to indigent inmates for Litigation mail.

It will be the responsibility of the inmate to establish the mail satisfies the requirements of this procedure for "Litigation Mail" sent at State expense. Failure to provide adequate documentation may result in delays in mailing. The inmate will be responsible to send a copy of the court document (stamped by the Court Clerk) listing all of the principle participants in the court action to the Mailroom. This document will be kept on file in the Mailroom. The inmate is also responsible to notify the Mailroom when the litigation has concluded. If Mailroom staff is unable to identify the indigent inmate "Litigation Mail" submitted for State paid postage, Mailroom staff is required to confirm or deny mail through the PBSP Litigation Office. Litigation staff will notify the Mailroom regarding "Litigation Mail" verification within 24 hours of Mailroom initial contact.

J.    Returned Mail

All undelivered letters and packages returned to the prison by the U. S. Postal Service will be opened using the automatic letter opener and inspected prior to being returned to the inmate. The purpose of this inspection will be to determine whether the contents originated with the inmate sender identified on the letter or package, and to prevent the introduction of material substances and property the inmate is not permitted to possess in the prison. The inspection of returned mail will include regular mail the inmates mailed and letters mailed as confidential correspondence. The contents will not be examined or read beyond the minimum necessary to determine the inmate sent it out and it was not opened or tampered with before its return to the prison. Inmate mail returned to PBSP due to lack of postage placed by an inmate will void previous postage.

K.    Address for Inmate Mail, Incoming and Return

To ensure proper mail delivery and prevent delays in receiving mail, all incoming and outgoing mail shall have the correct inmate commitment name, CDCR identification number, housing, address and zip code inscribed on the front of the envelope or package.

An example of the method of addressing incoming correspondence is:

John A. Doe, C-00000
Pelican Bay State Prison
P. O. Box 7500, Housing Unit, Cell #
Crescent City, CA 95532-7500

A 3

All outgoing inmate mail will be required to have a complete return address on the upper left-hand corner of the envelope.  An example of the return address is:

John A. Doe, C-00000
Pelican Bay State Prison
P. O. Box 7500, Housing Unit, Cell #
Crescent City, CA  95532-7500

Return addresses are required on both incoming mail and all outgoing mail. Incoming mail that does not reflect a return address that includes a verifiable P. O. Box number or street number and name, city, town or province, state or country, and zip code will be forwarded to the Investigative Services Unit for screening. Out going mail without the full return address will be returned to the sender.

The sender listed as the return addressee must be the author or person of origin for the contents of the mailing and is responsible for the contents of the mailing. Use of a fictitious name or address by the sender shall be cause to disapprove the mailing and may be referred to Federal Authorities for possible prosecution under United States Code Services, Title 18, Section 1342.

A stamp indicating the mailing is from a State prison will be affixed to all outgoing correspondence by Mailroom staff prior to being forwarded to the local U. S. Postal Service.

L.    Locating Inmate's Housing for Mail Distribution

All inmate mail without a CDCR identification number will be returned to sender. First Class mail and prepaid magazine subscriptions with incorrect housing will be forwarded to the inmate's new location within the institution by Housing Unit Facility staff.

Security Housing Units:  Mail for an inmate with an incorrect housing address will be taken to the Facility Corridor Control for reroute processing.  Staff from each housing unit will pick up their rerouted mail from Corridor Control for delivery.  Mail for inmates no longer housed in the SHU will be routed for delivery by the Program Office staff to the proper facility.  *No rerouted mail will be returned to the Mailroom unless the inmate is no longer at this institution.*

General Population Units:  Mail for an inmate with an incorrect housing address will be taken to the Facility Program Office for reroute processing.  The reroute processing will be accomplished by either First or Third Watch Program staff. Mail for inmates no longer housed in a facility will be routed to the proper facility through the Watch Office on First Watch.  *No rerouted mail will be returned to the Mailroom unless the inmate is no longer at this institution.*

M.    Enclosed Funds

Funds may be mailed to the inmate by money order, certified check, or personal check.  Any currency found in mail will be forwarded to the Accounting Office for processing.  The CDCR 1819 will be completed by the Mailroom and enclosed in the mailing, stating that a check for the currency received in the mailing will follow within 30 days.  One copy will be forwarded to the inmate and one copy placed in the Mailroom's Return Notification file.  PBSP's Accounting Office

A 4

enable the funds to be posted to the inmate's trust account. The remainder of the mailing will be processed as described in this OP.

N.    Undelivered and Disallowed Incoming Mail

Mail addressed to an inmate including a publication, package, or an enclosure in otherwise acceptable mail, which is specifically prohibited by prison procedures and may be disposed of as provided in the CCR, Title 15, Section 3147 (a) (5)(A) and (B).

Undelivered and disallowed mail containing properly executed money orders, certified checks and/or personal checks will be processed in compliance with this OP.

According to the Domestic Mail Manual regulations, metered envelopes will not be accepted in the incoming mail. Premetered mail will only be accepted if it arrives as confidential or legal correspondence.

When mail is disallowed it shall be retained for not less than 15 days. All mail disallowed by facility custody staff will be retained in a secured locked locker in the housing units pending completion of the Second Level Appeal process. Mail disallowed by Mail Room staff will be maintained in the secured Mail Room pending completion of the Second Level Appeal process.

An inmate's submission of an Inmate/Parolee Appeal Form, CDCR 602, within 15 days of notice that the mail is being withheld pending appeal will stay any disposition of the mail until an appeal decision is made at the second level of appeal review. If the inmate's appeal is denied at the second level of appeal review, the item will be disposed of as provided in this procedure. Depending upon the disposition made of the mail, the inmate may refer his appeal to the Director.

Should the inmate choose to mail out contraband items, the inmate is responsible to provide an addressed envelope, appropriate postage, trust withdrawal or indigent envelope to pay for return of disallowed contraband. Failure to return the form and postage within 15 calendar days will constitute approval to destroy disallowed contraband.

O.    Disposition of Disallowed Outgoing Mail

If for any reason set forth in either the CCR, Title 15, or OP 205, an inmate letter is disallowed or not mailed promptly, the inmate will be notified by staff in writing of the reason for refusal to accept or delay in processing. The notice will include the disposition to be made by departmental employees. Unless the retention of such mail is required in legal or disciplinary proceedings against the inmate, it will be mailed or promptly returned to the inmate. All incoming and outgoing mail shall be handled in accordance with the CCR, Title 15, Section 3147(a)(2)(3).

A 5

Attachment 1

STATE OF CALIFORNIA
CDC 1819 (Rev. 6/98)
DEPARTMENT OF CORRECTIONS

## NOTIFICATION OF DISAPPROVAL - MAIL/PACKAGES/PUBLICATIONS

INMATE'S NAME | CDC NUMBER

## MAIL / PACKAGES SECTION (Complete for mail or package cases only)

☐ INCOMING MAIL/PACKAGE          ☐ OUTGOING MAIL/PACKAGE

LIST ITEM(S) WHICH MEET DISAPPROVAL CRITERIA

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION

| DISPOSITION | SENDER INFORMATION | | |
|---|---|---|---|
| ☐ HELD PENDING INVESTIGATION/APPEAL | FIRST NAME | MI | LAST NAME |
| ☐ RETURNED TO SENDER _____ (At Inmate's Expense)      (Date) | ADDRESS (NUMBER AND STREET) | | |
| ☐ DESTROYED | CITY | STATE | ZIP CODE |
| *(INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL, OTHERWISE MATERIAL WILL BE DESTROYED). | I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE) | | DATE SIGNED |

### AUTHORITY TO DISALLOW  (Must be completed in all cases)

| PRINTED NAME OF WARDEN'S DESIGNEE | SIGNATURE OF WARDEN'S DESIGNEE | DATE SIGNED | DATE FORWARDED TO INMATE |
|---|---|---|---|

## PUBLICATIONS SECTION (Complete for publication cases only)

| TITLE OF PUBLICATION (Include issue/date) | PUBLISHER | PAGE(S) WHICH MEET DISAPPROVAL CRITERIA |
|---|---|---|

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION

| DISPOSITION | DESIGNEE INFORMATION | | |
|---|---|---|---|
| ☐ HELD PENDING INVESTIGATION/APPEAL | FIRST NAME | MI | LAST NAME |
| ☐ DESTROYED | ADDRESS (NUMBER AND STREET) | | |
| ☐ RETURNED TO OUTSIDE DESIGNEE AT INMATE'S EXPENSE _____ (Date) | CITY | STATE | ZIP CODE |
| **(INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL, OTHERWISE MATERIAL WILL BE DESTROYED). | I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE) | | DATE SIGNED |

### AUTHORITY TO DISALLOW  (Must be completed in all cases)

| FACILITY CAPTAIN'S PRINTED NAME | FACILITY CAPTAIN'S SIGNATURE | DATE SIGNED | DATE FORWARDED TO INMATE |
|---|---|---|---|

DISTRIBUTION:
ORIGINAL - MAILROOM         * ALL APPEALS REGARDING MAIL/PACKAGES SHALL BE REFERRED TO THE WARDEN'S DESIGNATED STAFF
CANARY - INMATE
PINK - SENDER / DESIGNEE        ** ALL APPEALS REGARDING PUBLICATIONS SHALL BE REFERRED TO THE FACILITY CAPTAIN.

A 6

Attachment 1A

**Please Return With CDC 1819
To The Mailroom**

## UNAUTHORIZED MAIL ITEM NOTICE

DATE: _____

INMATE:_____ CDC# _____ HOUSING: _____

### PLEASE RETURN THE YELLOW COPY OF THE CDC 1819 WITH THIS NOTICE FOR PROCESSING.

UNAUTHORIZED ITEM (S) : _____

_____

_____

Circle the number of the action you request to be taken.

POSTAGE NEEDED $ _____ (ADDRESSED ENVELOPE REQUIRED)

The amount of postage is quoted for sending disallowed item only. If you add anything to to the envelope the postage may be more.

1.  Send unauthorized items to the person of your choice at your expense. Enclose the appropriate amount of postage, trust withdrawal or enough indigent (current month) envelopes to cover the cost of postage.

Name: _____

Address: _____

City, State & Zip Code: _____

2.  Destroy unauthorized items.

3.  Donate per Institutiional Procedures.

Note: PBSP does not have the capacity to store unauthorized items or inmate's unisssued personal property.

### FAILURE TO RETURN THIS FORM WITHIN FIFTEEN DAYS WILL CONSTITUTE YOUR APPROVAL TO DISPOSE OF THE UNAUTHORIZED MAILING.

_____
Inmate's Signature and date signed (REQUIRED)

PROCESSED BY: _____
NAME AND TITLE

A 7

     d.   The inmate will sign the log for all incoming confidential mail.

     e.   If an inmate has, in the past, destroyed the Legal Mail Logbook, or threatens to destroy any portion of the log book, the Unit Floor Officer will:

        (1)  Photocopy the address side of the legal correspondence.

        (2)  Have the inmate sign the photocopy to acknowledge receipt of the legal mail.

        (3)  Open the legal mail in the presence of the inmate, search it for contraband and deliver it to the inmate.

        (4)  Fill out the officer's portion of the Legal Mail Logbook.

        (5)  Staple the signed photocopy of the legal mail into the Legal Mail Logbook as a record that the inmate received his legal mail.

7.   Legal mail is delivered to the SHU separate from general mail. Staff will ensure the legal mail is picked up and delivered to the inmate prior to the end of the shift.

8.   A Notification of Disapproval – Mail/Package/Publications (CDC 1819) shall be completed on all disallowed mail. The reviewing officer will print his name on top of the CDC 1819. The CDC 1819 shall be forwarded to the Facility Sergeant for confirmation of its disallowable status. The mail and the CDC 1819 shall then be forwarded to the Facility Captain for final review. The inmate will be provided a copy of the CDC 1819 describing the reason the mail was rejected. The inmate must designate the desired disposition of the mail, and the officer shall check the appropriate box on the CDC 1819. All mail designated to be held pending appeal shall be forwarded to the facility sergeant and will be secured in a secure locker in the SHU Disciplinary Office.

Violations of mail regulations shall be documented on a CDC 115 or CDC 128. Coded messages, or messages written in languages or alphabets for the purpose of avoiding staff inspection, shall be returned to the inmate along with a copy of the reason for rejection.

**F.  Library Books**

1.   Library book exchange will be conducted every two weeks.

     a.   The maximum book loan period is two weeks. Books may be returned and a new one checked out every two weeks. Inmates may check out two books at a time.

     b.   A book may be renewed on or before the due date.

A 8

# EXHIBIT  B

**Section 3130 is amended to read:**

**3130. General Policy.**

The California Ddepartment of Corrections and Rehabilitation (CDCR) encourages correspondence between inmates and persons outside the correctional facilityies. The sending and receiving of mail by inmates shall will be uninhibited except as specifically provided. ~~The privacy of correspondence between inmates and persons outside correctional facilities shall not be invaded except as may be necessary to prevent physical injury to persons and to maintain the security of correctional facilities and the community.~~ The Department shall provide guidelines for orderly processing of inmate mail and to give direction to staff, inmates, and their correspondents concerning facility mail requirements. Mail shall be delivered to inmates, regardless of housing, unless it is contraband pursuant to section 3006, or is disturbing or Offensive Correspondence pursuant to section 3135.

**NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 2600, 2601(d), 5054, Penal Code.** *Procunier* v. *Martinez*, **416 U.S. 396.**

**Section 3131 is amended to read:**

**3131. Plan of Operation**

Each warden, ~~superintendent and~~ or heads of a correctional facilityies shall prepare and maintain a plan of operations for the sending and receiving of mail for all inmates housed in the facility. ~~This plan will require the director's approval before implementation and before any revision is made to an approved plan.~~ Procedures of the correctional facility shall conform to the policies, regulations and the provisions of law made reference to and shall apply to all inmates of the facility. Correctional staff

whole, depicts or describes sexual conduct, and lacks serious literary, artistic, political, or scientific value.  Additionally, material is considered obscene when it appears from the nature of the matter or the circumstances of its dissemination, distribution or exhibition that it appeals to deviant sexual groups.   Material subject to the test of the above includes, but is not limited to:

(1) Portrays sexually explicit materials, which are defined as materials that show frontal nudity including personal photographs, drawings, and magazines and pictorials that show frontal nudity.

(2) Portrays, displays, describes, or represents penetration of the vagina or anus, or contact between the mouth and genitals.

(3) Portrays, displays, describes, or represents bestiality, sadomasochism, or an excretory function, including urination, defecation, or semen.

(4) Portrays, displays, describes, or represents the nudity of a minor, or person who appears to be under 18 years old.

(5) Portrays, displays, describes, or represents conduct that appears to be non-consensual behavior.

(6) Portrays, displays, describes, or represents conduct that appears to be forceful, threatening, or violent.

(7) Portrays, displays, describes, or represents conduct where one of the participants is a minor, or appears to be under 18 years old.

(e) If the receiver of any mail, confidential or nonconfidential, directs a written complaint to administrative staff of the department or to facility institution officials, due

to or being sent by an inmate are withheld or disallowed, the inmate shall be informed via CDC Form 1819, Notification of Disapproval-Mail/Packages/Publications (Rev.-6/98) of the reason, disposition, name of official disallowing the mail/package/publication, and the name of the official to whom an appeal can be directed

(b) Such mail shall be referred to a staff member not below the level of facility captain. Disapproved outgoing mail shall be processed in accordance with subsection 3147(a)(6). Disapproved incoming mail shall be disposed of in the manner set forth in subsection 3147(a)(5)(B).

When mail is withheld based on the criteria established in this section, a copy of the CDC Form 1819 and the supporting document(s) shall be retained by each facility for a minimum of seven years for litigation purposes. After seven years if the material is not needed it shall be destroyed. If a lawsuit has been filed it will be retained for two years from the conclusion of the suit.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2600 and 2601(d), Penal Code.

Section 3137 is amended to read:

3137. Appeals Relating to Mail and Correspondents.

(a) Inmates and their correspondents and publishers of inmates may appeal departmental rules, regulations, policies, approved facility procedures and their application of same, relating to mail and correspondence.

(b) Inmates shall use the established inmate appeal procedures as provided in section 3084.1, et seq. An inmate's submittal of an appeal within 15 days of a notice that mail is being designated as undelivered will postpone any disposition of the mail until an

1. Juan Angel Martinez H-43376
2. P.O. Box 7500   C-7-214
3. Crescent City. CA. 95532.
4. plaintiff in pro-se.

5. IN THE UNITED STATES DISTRICT COURT
6. FOR THE NORTHERN DISTRICT OF CALIFORNIA
7. SAN FRANCISCO DIVISION.

8.
9. JUAN ANGEL MARTINEZ, JR;          C 07-4684 CRB (PR)
        PLAINTIFF.

10.                                  DECLARATION OF PLAINTIFF IN
11.      V.                          OPPOSITION TO DEFENDANTS
                                     MOTION FOR SUMMARY
12.                                  JUDGMENT.
13. JAMES. E. TILTON, et al.,
        DEFENDANTS.

14.

15.   I, Juan A. Martinez, Declare as follows;

16.

17.   1. I am the plaintiff in the above entitled Case. I make
18. this declaration in opposition to defendants' Motion for Summary
19. Judgment on my claim concerning violations of my first and fourt-
      eenth amend rights in regards to Mail.

20.   2. The Defendants Claim, in summary that all of their
21. actions concerning Mail was legal, and not in violation of my Constit-
22. utional rights. They state that they provided me with all due
23. process protections. And that the forms they used were the right
24. forms and that stamping policy is justified penologically.

25.   3. The Defendants are not entitled to summary judgment
26. because there are genuine issues of Material fact to be resolved.
   These issues are identifed in the in the Accompanying stateme-
27. nt of Disputed Factual issues. (see i,ii,iii). The facts are set out
28. in this declaration.

1

4. On 9-19-06 plaintiff filed an appeal log# C-06-02404. due to my mail being Confiscated. I was not properly notified of what reasons my mail was being denied, further the notice was not completed properly and in accordance with SHU policy.

5. Defendants admitted in all three reviews that my rights were violated.

6. Defendants lost or misplaced plaintiffs letter, which did not allow, officials other than the one making the initial decision to Confiscate, to properly review decision to deny.

7. On 12-26-06 plaintiff filed an appeal log# C-07-00012 due to his mail being Confiscated. plaintiffs rights were violated in that defendants did not use the Correct forms to deny his mail, and reviews by officials other than the one who made the initial decision were not adequate.

8. On 2-1-07 plaintiff filed an appeal log# C-07-00269 due to his mail being Confiscated, plaintiffs rights were violated in that defendants did not use the Correct forms to deny his mail, and reviews by officials other than the one who made the initial decision were not adequate.

9. plaintiff asserts that the true reason Defendants use non-approved 128 B forms to deny mail is, so that they may use these 128-B's to re-validate, or deny prisoners release from SHU without having to provide due process protections.

10. On 12-26-06 plaintiff filed an appeal log# C-06-03253. due to his mail being Censored, and unreadable, because of new non-lawful policy of point of origin stamp.

11. Contrary to Defendants Affidavits. non of these new mail policies were approved by the director. thus, these policies are in violation of established CDCR Rules. and not related to legitimate penological Concerns.

12. plaintiffs due process rights were violated in all Appeal reviews in that all forms advising him of Confiscation were not approved by CDCR. nor PBSP Operational policy regarding Mail.

2.

13. Plaintiff claims that Defendants true purpose for employing point of origin stamp is to further stigmatize all SHU prisoners.

14. Plaintiff claims that by Defendants using 128 B's. to deny Mail, they also Mail a copy of 128 B's. to Sender of Correspondents, threatening prosecution, without fully investigating the Mail concerns which is prejudicial and inflammatory.

15. Plaintiff claims that once uncorroborated 128-B forms are placed in his file, these unsubstantiated claims will be used against him to deny release from SHU, and retain him in SHU for six more years, leaving him no means to challenge those allegations.

16. Plaintiff claims that Defendants statements of using point of origin stamps to fight intra-gang communication are false. Defendants have moved all influential Members or associates together in four Building Units. Thus, they no longer need Mail to Communicate.

17. There are policies and procedures already in place to prevent Mail circumvention, Defendants reasons for employing policys do not hold water, and are arbitrary, and an exaggerated response.

18. On 4-30-07 plaintiff filed appeal log # C-07-01000. due again to his Mail being Confiscated. Defendants circumvented established procedures, in using Correct forms, and failed to Corroborate allegations, or provide me with enough information to marshall a defense to challenge these allegations. (See Exhibit 'A' Attached)

19. Defendants again threatend my Correspondants with prosecution without fully investigating allegations.

20. On 8-2-07. plaintiff filed appeal log # C-07-01704. due again to his Mail being Confiscated, Defendants Circumvented established procedures. in using Correct forms, and failed to Corroborate allegations or provide me with enough information to Marshal a defense.

21. During Second level review of appeal. C-07-01704. CCII. gang Specialist Hawkings, granted my appeal, and gave me the letter, as well as removed the 128-B from my file. After a review he deemed the letter to be non-gang related.

3

22. Plaintiff's Correspondents had already recieved 128-B. alleging gang activities. And possible prosecution. Even though after a thorough review it was Concluded that none of the allegations were proven nor Correct. (See attached "B")

23. On 8-28-07 plaintiff filed appeal log# C-07-01890. due again to his mail being Confiscated. Defendants Continue to Circumvent established mail procedures by using incorrect forms, and failed to Corrobcrate allegations or provide me with enough information to Marshall a defense. (see attached "C")

24. plaintiff alleges that Appeal log# C-07-01000. (ATTACHED "A"). proves that the Usage of 128-BS to deny mail, And then place these forms in C-file to be used in Validation proceedings is arbitrary.

25. The initial reason for denying my mail was for gang activities and gang related material. In the review process it was determined that the drawing in fact was not gang related. But instead of Correcting the 128-B. Defendants, used another reason to keep the Correspondence, indicating that inmates Cannot exchange gifts. This 128-B. is still in my file and will be used against me, in validation process, because 128B says gang activities. I have had those drawings in my possesion for years, and had sent them out to be Copied by my sister, to make greeting Cards. Even though drawings had no gang activity, My sister was still threatened with prosecution. (See Exhibit "A")

26. Defendants Continue to use 128BS. to deny mail and threaten families of inmates and or friends, Based on assumptions, and whims. With full Knowledge that process is arbitrary and not in accordance with CDCR, PBSP. policy and rules.

27. Contrary to Defendants' affidavits, these policies have not been Successful in hampering gang activities. As mail is no longer needed to Communicate since Defendants moved all Gang Members and or Associates who are deemed influential, to the same four Units.

4.

1.  28. The Fore going factual allegations Create a genuine issue
2.  of material fact and will, if proved at trial, entitle me to
3.  Judgment, as explained in the brief Submitted with this
    declaration.
4.
5.     Pursuant to 28 U.S.C. §1746, I declare under penalty of
6.  perjury that the foregoing is true and Correct. Executed at
7.  Crescent city California.
8.  6-12-08
9.  Dated                              Plaintiff. Juan A. Martinez
10.                                        in pro-se.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.

5

# EXHIBIT  A

PELICAN BAY STATE PRISON

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

SECURITY HOUSING UNIT    Location: Institution/Parole Region    Log No.    Category

UNIT C-7    PBSP-07- 01000    3/2

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| MARTINEZ J. A | H-93376 | | C-7-224 |

**A. Describe Problem:** In Re CCR 3023(a) 3136(b), 3147(4)(5)(A)(7). CDC 128 B. dated 4-19-07. Stopped mail notification. Authored by D. Milligan. (IGI) First PBSP is violating established mail procedures per CCR 3131 & OP 205, by deliberately Circumventing usage of CDC 1819, and instead using unlawfully a CDC 128 B. To notify ynes of Mail Dissapproval.

I contest that I OR my Correspondent, are engaged, in any "gang activity" per CCR 3023(b) we are not knowingly promoting, furthering, or Assisting any gang. Further, their is nothing in this 128 B. that gives me

If you need more space, attach one additional sheet.

**B. Action Requested:** That I be given my art work and Correspondence. And if not then that I be provided enough information to provide myself with an adequate defense, that this 128-B. be removed from my file, and all files, that PBSP stop using 128-B s, And use CDC 1819. And that my correspondent be given an apology. For being threatened with a crime, on mere allegations. or art be returned to sender.

**Inmate/Parolee Signature:** _____    **Date Submitted:** 4-30-07

**C. INFORMAL LEVEL (Date Received: _____ )**

Staff Response: _____

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

JUN 20 2007

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

MAY 0 1 2007

2ND IGI

A-1

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E.  REVIEWER'S ACTION (Complete within 15 working days). Date assigned: _____ • Due Date: _____

Interviewed by: _____

_____

_____

_____

**BYPASS**

_____

_____

Staff Signature: _____ • Title: _____ • Date Completed: _____

Division Head Approved:                                        Returned

Signature: _____ • Title: _____ • Date to Inmate: _____

F.  If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

**BYPASS**

_____

Signature: _____ • Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____ 5-1-07

G.  REVIEWER'S ACTION (Complete within 10 working days). Date assigned: _5-1-07_ • Due Date _6-13-07_

☐ See Attached Letter

C Hunt Cap T                                          6/25/07

Signature: _D.T.R. Butler, CCII_ • Date Completed: _06/22/07_

Warden/Superintendent Signature: _____ • Date Returned to Inmate: _7-9-07_

H.  If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Dissatisfied Appeal Not Granted in full. Second level reviewer Did not respond to Any Of the Issues in My Appeal for the 128-B. Reviewer is now trying to justify the withholding of Correspondence/Drawings By stating it was From Another Ym. None Of this was indicated On the 128-b and reason for Denial. My Sister was threatend with Prosecution & Misconduct for Unsubstantiated allegation which still has not been addressed. I have been in Possesion of these Drawings for years.

Signature: _____ • Date Submitted: _7-17-07_

For the Director's Review, submit all documents to:  Director of Corrections
                                                     P.O. Box 942883
                                                     Sacramento, CA 94283-0001
                                                     Attn: Chief, Inmate Appeals

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DIRECTOR'S ACTION:  ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

☐ See Attached Letter                                          **OCT 1 4 2007**

CDC 602 (12/87)                                        Date: _____

A-2

1. enough information to provide an adequate defense. for this
2. arbitrary action. what gang is purportedly being furthered
3. Assisted, or promoted? what was this "alleged" symbol?
4. What type of Art work was it? Where was the symbol
5. in the Artwork.? was it a drawing? a Card? If so,
6. was it (1), one, or several.? was their a letter
7. enclosed in the mailing?
8.    To place this 128-B. into My Central file, Awc file, and
9. send a copy to My Correspondent. is not only inflammatory
10. and prejudicial. it is also in violation of Title 15. Mail violations
11. are to be documented on a CDC 1819. and once a complete
12. review is done. only then should a 128-B. issued. by by-pass-
13. ing established procedures. this violates my 1st and 14th
14. Amendments to the US. constitution. and procedural due
15. process protections. the CDC 1819. was established to protect
16. these rights. PBSP is deliberately circomventing these procedures.
17. with the intent to ostracize Yus from their loved ones
18. and Correspondents. by Mailing these 128-B's to them
19. And threatening them with Violating the law. on mere
20. Assumptions And allegations that are not Varified. and they
21. be overturned. via a 602.
22.
23.
24.
25.                PELICAN BAY STATE PRISON
26.                SECURITY HOUSING UNIT
27.                UNIT C
28.

A-3

NAME: **MARTINEZ**                 CDC#: **H93376**        HOUSING : **C7-224**        CDC 128-B

On ___04/19/07_____    Correspondence was stopped for the above-named inmate.  The mailing is described as follows:

☐ OUTGOING CORRESPONDENCE/ ADDRESSED TO:        ☒ INCOMING CORRESPONDENCE / FROM:

LISETTE MONTEMAYOR
10156 LAWRENCE #2170
MT. VERNON, MO. 65712

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
 ☒ Promotes gang activities [Title 15, 3023 (a)]
 ☐ Unauthorized business dealings [ Title 15, 3024 (a)]
 ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
 ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
 ☐ Third party correspondence [OP 205, Attachment 8, #32]
 ☐ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
 ☒ Other (describe): GANG RELATED MATERIAL / OP 205 ATTACHMENT8 #1/ GANG SYMBOLS IN ARTWORK.

☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☐ It is deemed to be a threat to legitimate penalogical interests. [Title 15, Section 3006(c) 16].
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information:
The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with [Title 15, Section 3147 (a) (5) (B) or 3147 (a) (6)].
☐ Placed in the Central File in accordance with [Title 15, Section 3147 (a) (7)].

Reporting Employee:                        Correspondence Disapproval Authorized By (Captain level or above):


_____              _____
D. MILLIGAN                                W. ANTHONY
Correctional Officer                       Correctional Captain (A)
Institutional Gang Investigations          Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility, Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)].  Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:    C-File
       AWC File                            PELICAN BAY STATE PRISON
       Investigative Services Unit         SECURITY HOUSING UNIT
       Inmate                              UNIT C-7
       Sender (incoming correspondence only)

DATE:  04/19/07        **STOPPED MAIL NOTIFICATION**        GENERAL CHRONO


A-4

| PELICAN BAY STATE PRISON |
| --- |
| SECOND LEVEL REVIEW |

DATE: **JUN 2 8 2007**

Inmate Juan MARTINEZ, H-93376
Pelican Bay State Prison
Security Housing Unit
Facility C, Unit 7

RE:   WARDEN'S LEVEL DECISION          APPEAL: DENIED
      APPEAL LOG NO. PBSP-C-07-01000     ISSUE:   MAIL

This matter was reviewed by Robert A. Horel, Warden, at Pelican Bay State Prison (PBSP). Correctional Counselor II D. Hawkes conducted the Appeal interview at the Second Level of Appeal Review on June 22, 2007.

All submitted documentation and supporting arguments have been considered, including the interview conducted at the Second Level of Review. Additionally, a thorough investigation has been conducted into the claim presented by the inmate and the documentation evaluated in accordance with PBSP's institutional procedures and the California Department of Corrections and Rehabilitation policies.

## ISSUES

MARTINEZ challenges the disapproval of his mailing and identifies PBSP staff of violating the mail disapproval process. He reports that staff are not utilizing the CDC 1819 and are, instead, documenting the disapproval on a CDC 128B, thereby, violating the directive of Operational Procedure 205. MARTINEZ denies that he and his correspondents are promoting gangs or gang activity. MARTINEZ contends that the documentation does not provide adequate information about the information identified as gang activity such as, if it is a symbol in the artwork or text of the letter. MARTINEZ reports that the notification to the outside correspondent is both inflammatory and prejudicial.

## FINDINGS

I

MARTINEZ is validated as an "active" associate of the Mexican Mafia (EME) prison gang. He is also known as "Angel" of the Ontario Black Angels.

II

The mailing was addressed from Lisette Montemayor, 10156 Lawrence #2170, Mt. Vernon, MO, 65712. It is postmarked April 10, 2007, from Mount Vernon, MO. Enclosed were cards manufactured from drawings by other inmates, i.e. "Jo Jo" Joseph Leyva, D-71520, and EME associate "Termite" Ray Vara, C-25007. Incorporated in the headdress of one of the subjects in Vara's drawing is the word "By Termita." On the earring of the same subject is "R Vara." These are identifications which support Vara is the illustrator.

A-5

Second Level Reviewer's Response
Appeal Log #: PBSP-C-07-01000
Inmate MARTINEZ H-93376
Page 2

III

California Code of Regulations (CCR), Title 15, Section 3136 (a) states, "Staff shall not permit an inmate to send or receive mail which, in their judgment, has any of the characteristics listed in section 3006 (c)."

CCR, Title 15, Section 3006 (c) (6), includes in the definition of contraband characteristics as material that contains *"any plans for activities which violate the law, these regulations or local procedures."* CCR, Title 15, Section 3192, states, in part, *"An inmate may not exchange, borrow, loan, give away or convey personal property to or from other inmates. Violations of this rule may result in disciplinary action, and confiscation and/or disposal of the personal property."*

The Department Operations Manual (DOM) Section 54010.29.1, relates to withholding mail. It states the following:

> *When a decision has been made to disallow mail, a CDC 128-B, General Chrono, shall be completed. It shall include the following information:*
> - *The disposition or proposed disposition of the mail.*
> - *The name of the staff person disallowing the mail.*
> - *The staff position to which an appeal may be directed.*
> - *The notice to the inmate, including name and address of the sender, and the disposition or proposed disposition if an appeal is not submitted to the named official within 15 days of the date of the notice.*
>
> *Distribution of the 128-B shall be as follows:*
> - *Original to C-File.*
> - *Duplicate to inmate.*
> - *Triplicate to mail room file.*
>   *A written notification shall be mailed to the sender of the disapproved correspondence. It shall include the reason the correspondence was withheld and the disposition of the mail. The notification shall be signed by staff taking the action.*

DETERMINATION OF ISSUE

The mailing was appropriately denied, for its contents reflected the inappropriate or unauthorized exchange of property from one inmate to another. An outside participant was being used to help copy and send the material for MARTINEZ. It is unknown if the drawings were obtained by Martinez through purchase or by gift. During the interview, MARTINEZ reported that the drawings were gifts to him by Leyva and Vara, and he had sent them out for copying.

The notification of the disapproval was in accordance with DOM Section 54010.29.1. Both Martinez and Vara share a common validated affiliation with the EME. Leyva and Martinez share a common affiliation with the Black Angels street gang from Ontario.

A-6

Second Level Reviewer's Response
Appeal Log #: PBSP-C-07-01000
Inmate MARTINEZ H-93376
Page 3


Based on the above, the appeal is DENIED. The original mailing shall be retained by the Institutional Gang Investigations Unit (IGI) pending completion of the appeal process. Following the completion of the process, MARTINEZ shall be afforded an opportunity to mail the items back to the sender at his expense. Should the appeal continue or proceed to litigation, then the IGI will be required to retain the item as evidence of the activity until all challenges are exhausted.

## MODIFICATION ORDER

No modification of this decision or action is required.


ROBERT A. HOREL
Warden

$A-7$

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: OCT 1 4 2007

In re: Juan Martinez, H93376
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0702483        Local Log No.: PBSP-07-01000

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner K. J. Allen. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that the institution deliberately violated departmental mail regulations by disallowing his correspondence with a CDC Form 128-B, General Chrono instead of using the required CDC Form 1819, Notification of Disapproval-Mail/Packages/Publications. The appellant requests on appeal that he be provided with his disallowed mail (art work) and that the general chrono be removed from his central file and any other file. Lastly, the appellant requests that the institution stop using the general information chrono to deny mail.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant is a validated active associate of the EME or Mexican Mafia prison gang, currently housed in the Security Housing Unit (SHU) at Pelican Bay State Prison (PBSP). The reviewer notes that one of the reasons gang members are housed in the SHU is to monitor and intercept their illicit communications. The appellant's mail was reviewed by supervising custody staff along with the associated chrono, which disallowed his mail. The reviewer notes that the appellant's mailing was appropriately denied for its contents reflected the unauthorized exchange of property from one inmate to another. An outside participant was being used to help copy and send material for the appellant. The confiscated mail by the Institution Gang Investigator (IGI) remains a part of an on-going investigation and following the completion of the process the appellant will be afforded an opportunity to mail the items back to the sender at his expense. The appeal was denied at the Second Level of Review.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.   FINDINGS:** The appellant's mail was properly considered by staff as it was in violation of departmental rules and regulations. The appellant's contention that staff circumvented CDCR regulations by notifying him of disallowed mail on a general chrono instead of the above-noted mail form lacks merit. The intent of the regulation is to notify inmates of mail issues and the general chrono more than notifies an inmate of the disallowed mail. In most cases there is more information on the general chrono than the CDC Form 1819.

The appellant's appeal claim is noted; however, the concern of IGI staff at the institution and the concern for the overall safety of the institution, staff and the public, outweigh the appellant's position. The IGI staff, including the correctional captain of the Investigative Services Unit, believe the appellant's mail contained inappropriate gang information that promoted illicit gang activity. The appeal inquiry was conducted by supervising custody staff and was reviewed by the institution's warden. The appellant has failed to provide a convincing argument to counter the institution's decision in denying his correspondence. Relief at the Director's Level of Review is unwarranted.

**B.   BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3006, 3023, 3130, 3131, 3136, 3270, 3271, 3380
CDC Operations Manual Section: 72010.7.2

**C.   ORDER:** No changes or modifications are required by the Institution.

A - 8

JUAN MARTINEZ, H93376
CASE NO. 0702483
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, PBSP
        Appeals Coordinator, PBSP

A-9

# EXHIBIT  B

28-B
7-26-07

STATE PRISON
SECURITY HOUSING UNIT
UNIT C-7

**INMATE/PAROLEE APPEAL FORM**

CDC 602 (12/87)

Location: Institution/Parole Region **PBSP**   Log No. **C07-01704**   Category **3/7**

1 _____

2 _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Martinez, Juan A. | NUMBER H-93376 | ASSIGNMENT | UNIT/ROOM NUMBER C-7-214 |

A. Describe Problem: In Re. CDC 128-B Dated 7/26/07. First this 128 B Circumvents the established Mail Procedures and Violates CCR 3131, 3136 and O.P. 205. The Correct form for "Stopped" Mail is a CDC-1819. Their is nothing in this 128-B that gives Me enough information to Provide an adequate Defense. I have a first and fourteenth amendment right Under the Constitution to free speech and protections from Unjustified interference with Mail & Correspondence. How is 3rd party Correspondence established? What Makes author of 128 Believe that

If you need more space, attach one additional sheet.

B. Action Requested: That I Be given My letter, and if Not, the reasons for Not giving Me My letter With sufficient information to Provide an adequate defense. Also that the letter/128 B Be removed from My C-file that Staff Not Use 128 Bs for "Stopped Mail" and refrain from Underground Policies.

Inmate/Parolee Signature: _____   Date Submitted 8-2-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____   Date Returned to Inmate: _____

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____   Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

AUG 0 3 2007

2ND IGI

B-1

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

BYPASS

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved:                                              Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

BYPASS

Signature: _____ Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☒ Other _Withdrawn___

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _8-3-07_ Due Date: _9-17-07_

☐ See Attached Letter  _Appeal withdrawn per inmate request. Letter delivered to inmate._
_& Brandon Capt. over_  _H-43376_

Signature: _D.T. Heaton, Cyl. Couns. II_ Date Completed: _____

Warden/Superintendent Signature: _____ Date Returned to Inmate: _10-01-07_

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to:  Director of Corrections
                                                      P.O. Box 942883
                                                      Sacramento, CA 94283-0001
                                                      Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

B. 2

Continued from A. Describe Problem

1. Letter is from a 3rd party, Or Use of fictitious
2. name? How is My Uncle providing, promoting gang
3. activity? what type of street gang activity is
4. Being referred to? It is arbitrary to place letters
5. in Central files Based On Uncorroborated perceptions
6. And Mere allegations Of Mail Violations their is no
7. legitimate penological interest, Or Justification in
8. this instance.
9.
10.
11.
12.
13.
14.
15. (B)
16. (Continued) ~that I Suffer No reprisals for filing this
17. appeal.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.

B-3

NAME:  MARTINEZ                 CDC#:  H93376     HOUSING   C7-214     **CDC 128-B**

On   7/26/2007              correspondence was stopped for the above-named inmate.  The mailing is described as follows:

☐ OUTGOING CORRESPONDENCE/ ADDRESSED TO:     ☒ INCOMING CORRESPONDENCE / FROM:

SAMUEL MARTINEZ

236 VICTORA AVE

SAN JACINTO, CA. 9253

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
    ☒ Promotes gang activities [Title 15, 3023 (a)]
    ☐ Unauthorized business dealings [3024 (a)]
    ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
    ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
    ☒ Third party correspondence [OP 205, Attachment 8, #32]
    ☒ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
    ☒ Other (describe): REFERRING TO STREET GANG ACTIVITY

☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☐ It is deemed to be a threat to legitimate penalogical interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information:
The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                          Correspondence Disapproval Authorized By (Captain level or above):

C. COUNTESS                                  K. BRANDON
Correctional Officer                         Correctional Captain
Institutional Gang Investigations            Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility, Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)]. Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:    C-File
       AWC File
       Investigative Services Unit            STATE PRISON
       Inmate                                 HOUSING UNIT
       Sender (incoming correspondence only)  UNIT C-7

DATE:   7/26/2007          **STOPPED MAIL NOTIFICATION**          GENERAL CHRONO

B-4

# EXHIBIT  C

8-22-01
STOPPED MAIL

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

1. PBSP       C07-01890       3/7

2. _____  _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Martinez Juan Angel | NUMBER H-93376 | ASSIGNMENT | UNIT/ROOM NUMBER C-7-214 |
|---|---|---|---|

A. Describe Problem: In Re CCR 3136. "Stopped Mail Notification" Captain K Brandon and C Countess are Circumventing Established Mail Procedures Violating CCR 3131 and CP 205. By Deliberately Using a CDC 128-B instead of the Approved CDC 1819 form. This Circumvention Of Mail procedure allows Stuff to arbitrarily deny, disaprove Ym Mail. Under CCR 3147(6) "Stopped Mail" Pertains to Mail that is being "Mailed" by the Ym. And Not being recieved Mail that is being with-held from an Ym that Was
— CONTINUED —

If you need more space, attach one additional sheet.

B. Action Requested: That My letter be delivered to me, And if not then, that I Be given enough information to provide Myself an adequate defense. That My letter be removed from My Central file that Cpt Brandon and C Countess Cease from Using 128 Bs, and Using underground policies

Inmate/Parolee Signature: _____     Date Submitted: 8-28-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

INMATE APPEALS BRANCH
OCT 24 2007
RECEIVED

Staff Signature: _____     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

AUG 29 2007

2ND JGI

CDC Appeal Number:

C-1

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

BYPASS

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved:                                              Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

BYPASS

Signature: _____ Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other  8/29/07

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 8/29/07 ___ Due Date: 10/12/07
☐ See Attached Letter            R. Brandon Capt.

Signature: _____ Date Completed: 10-4-07
Warden/Superintendent Signature: _____ csu  Date Returned to Inmate: 10-17-07

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Dissastisfied Appeal Not granted in full. Their is still not enough
information for Me to provide an adequate Defense, their still is circum-
vention of established Mail procedures. And still Censorship of My 1st Amend-
mend Right of free speech per the U.S. Constitution.

_____

Signature: _____ Date Submitted: 10-21-07

For the Director's Review, submit all documents to: Director of Corrections
                                                     P.O. Box 942883
                                                     Sacramento, CA 94283-0001
                                                     Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☐ See Attached Letter                                                  JAN 2 2 2008
                                                            Date: _____
CDC 602 (12/87)

C-2

1. Continued from A. Describe problem.

2.

3.   Sent from an Outside party is, Under CCR 3147(5)(A\B). And
4. Under these guidelines I Should have been advised of Withheld/
5. disallowed Mail via CDC 1819.

6.   Further their is nothing in this 128-B. that Gives me
7. enough information to provide an adequate defense. How is
8. My Uncles letter Considered to be in violation of institut-
9. ional rules, Or what Gang is being Promoted? by Marking
10. A box that says "Promotes Gang activities". Does not
11. qualify as adequate Notice. what Part of the letter
12. Knowingly Promotes, furthers, Or assists any gang?(per CCR.
13. 3023). I have the first and fourteenth Amendment
14. right to Freedom of Speech, and due Process. both of these
15. rights are being impeded and interfered with

16.   Further it is arbitrary to place letters in Central files
17. based on Uncorroborated Perceptions and Mere assumptions
18. their is no legitimate Penological interest or justificat-
19. ion in this instance.

20.

21.

22.

23.

24.

25.

26.

27.

28.

                                                    C-3

NAME:  MARTINEZ _____  CDC#:  H93376 ____  HOUSING ___C7-214____  **CDC 128-B**

On __8/22/2007_____  correspondence was stopped for the above-named inmate.  The mailing is described as follows:

☐ OUTGOING CORRESPONDENCE/ ADDRESSED TO:    ☒ INCOMING  CORRESPONDENCE / FROM:

SAMUEL MARTINEZ _____

236 VICTORA AVE _____

SAN JACINTO, CA. 92583 _____

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
    ☒ Promotes gang activities [Title 15, 3023 (a)]
    ☐ Unauthorized business dealings [3024 (a)]
    ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
    ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
    ☐ Third party correspondence [OP 205, Attachment 8, #32]
    ☐ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
    ☐ Other (describe):
☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☐ It is deemed to be a threat to legitimate penalogical interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information:
The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                          Correspondence Disapproval Authorized By (Captain level or above):

_C. COUNTESS_____          _K. Brandon_____
C. COUNTESS                                 K. BRANDON
Correctional Officer                        Correctional Captain
Institutional Gang Investigations           Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility, Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)]. Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:    C-File
      AWC File
      Investigative Services Unit
      Inmate
      Sender (incoming correspondence only)

DATE:    8/22/2007        **STOPPED MAIL NOTIFICATION**        GENERAL CHRONO

C-4

| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

DATE:  **OCT 1 2 2007**


Inmate: MARTINEZ, H-93376
Pelican Bay State Prison
Security Housing Unit
Facility C


RE:    WARDEN'S LEVEL DECISION          APPEAL:    **DENIED**
       APPEAL LOG NO. PBSP-C-07-01890     ISSUE:     MAIL


This matter was reviewed by Robert A. Horel, Warden, at Pelican Bay State Prison (PBSP).  Correctional Sergeant J. Barneburg conducted the Appeal interview at the Second Level of Appeal Review on October 3, 2007.

All submitted documentation and supporting arguments have been considered, including the interview conducted at the Second Level of Review.  Additionally, a thorough investigation has been conducted into the claim presented by the inmate and the documentation evaluated in accordance with PBSP's institutional procedures and the California Department of Corrections and Rehabilitation policies.

## ISSUES

Inmate MARTINEZ claims that Correctional Captain K. Brandon is circumventing established mail procedures by providing notification of disallowed mail with a CDC 128B, Stopped Mail Notification, instead of a CDC 1819, Notification of Disapproval-Mail/Packages/Publications.  MARTINEZ cites the California Code of Regulations (CCR), Title 15, Section 3147. (6).  MARTINEZ claims this section identifies "Stopped Mail" as outgoing mail being disallowed.  MARTINEZ further contends that under CCR, Title 15, Section 3147 (5) (A) (B), incoming mail is identified as withheld or disallowed mail requiring the issuance of a CDC 1819. MARTINEZ claims that the CDC 128 supplies insufficient information to allow him prepare an adequate defense.  MARTINEZ claims that his First and Fourteenth amendment rights are being interfered with as a result of this practice.  MARTINEZ states that there is no penological interest or justification in placing this mail into his Central File.

Inmate MARTINEZ requests: 1) to be given the incoming letter or supplied with the reasons for disallowing the letter with sufficient information included to provide for an adequate defense; 2) that the letter be removed from his Central File; and 3) for IGI staff to stop using CDC 128b's instead of CDC 1819 when notifying parties of disallowed mail.

The Informal Level, Formal Level and First Level were bypassed in this appeal.

On October 3, 2007, Sergeant Barneburg interviewed inmate MARTINEZ concerning the contents of this appeal.  During the course of this interview, MARTINEZ related essentially the same information that he provided in his written appeal.

C-5

Second Level Reviewer's Response
Appeal Log #: PBSP-C-07-01890
Inmate MARTINEZ H-93376
Page 2

FINDINGS

I

Inmate MARTINEZ is a validated associate of the Mexican Mafia (EME) prison gang the alias of "Angel." MARTINEZ was validated pursuant to CCR, Title 15, Section 3378, and the Department Operations Manual (DOM) 61020 by the Office of Correctional Safety. Sergeant Barneburg interviewed IGI Officer C. Countess regarding this appeal. Officer Countess confirmed that he had authored the CDC 128B dated August 22, 2007, authorized by Captain Brandon regarding this mailing. In the informational chrono, Officer Countess cites CCR, Title 15, Section 3023, Promotion of gang activity.

II

Sergeant Barneburg reviewed the letter and made the following observations: The author of the letter refers to multiple attempts to forward third party correspondence from other incarcerated inmates to inmate MARTINEZ. Additionally, the author attempts to provide information regarding the location and status of inmates at other institutions. Prison gang members and associates commonly use third parties to route illicit communications between unauthorized correspondents. Supplying information regarding the status and locations of inmates at other institutions to a validated gang associate is considered an act in support of the gang and its activities.

III

Regarding MARTINEZ' contention that notification of disallowed mail must be done using a CDC 1819, CCR, Title 15, Section 3147. (5) A & B and (6), do not identify which form is to be used for the notification of stopped or disallowed mail. This section does spell out what information the notification document must contain when used to notify the authors of <u>both</u> incoming and outgoing stopped mail. Review of the CDC 128b dated August 22, 2007, authored by Officer Countess, and authorized by Captain Brandon, shows that it does, in fact, contain all of the information required by departmental rules and regulations regarding the disallowance of mail.

*CCR, Title 15, Section 3147. (5) A & B states in part; (A) The inmate will be promptly informed in writing of the reason the mail is being disallowed; the disposition to be made of the mail; the name of the official disallowing the mail; and, the name of the official to whom an appeal may be directed. The notice to the inmate shall include the name and date of the publication, or the name and address of the sender, and shall inform the inmate of the disposition that shall be made, if an appeal is not submitted to the named official within 15 days of the date of the notice. (B) Incoming mail disallowed under the provisions of this article, under facility procedures, or pursuant to an appeal, shall be destroyed or mailed at the inmate's expense to an approved outside correspondent. The undelivered mail shall be destroyed 15 days after the notification of undelivered mail is forwarded to the inmate unless the inmate designates who is to receive the mail and authorizes withdrawal from their trust account to pay for the expense of mailing, or as authorized by the institution head, provides sufficient postage stamps already in the inmate's possession.*

*CCR, Title 15, Section 3147. (6) Stopped Mail. If for any reason set forth in this article or in approved facility mail procedures any first or second class mail is not accepted for mailing for an inmate or is accepted for mailing but is not promptly mailed, the inmate will be notified in writing of the reason for refusal to accept or to promptly mail the items. The notice will include the disposition to be made of any such mail in the*

C-6

Second Level Reviewer's Response
Appeal Log #: PBSP-C-07-01890
Inmate MARTINEZ H-93376
Page 3

*possession of department employees. Unless the retention of such mail is required in legal or disciplinary*
*proceedings against the inmate it will be promptly mailed or returned to the inmate.*

## DETERMINATION OF ISSUE

The Second Level Reviewer has examined all pertinent documents including all information received during
the Second Level interview. MARTINEZ has received all copies of documents relating to this issue and was
cited the appropriate CCR sections of the Title 15 to examine. This appeal is **DENIED** at the Second Level.
Based upon a review of all of the available information, the mailing was appropriately confiscated by IGI as it
contained information regarding the status and locations of inmates in other institutions, and due to this fact,
inmate MARTINEZ' request to receive this letter is DENIED. MARTINEZ' request for the letter to be
removed from his Central File is DENIED. This letter was not placed in MARTINEZ' Central File rather as
indicated on the CDC 128 B dated August 22, 2007, this letter is being retained by the IGI pending further
investigation. MARTINEZ' request for IGI staff to stop using Informational Chronos in lieu of the CDC 1819
is also DENIED. The use of this form is legitimate and in accordance with departmental rules and regulations.
MARTINEZ has failed completely to show how the disallowance of a letter from Samuel Martinez containing
gang related information has violated his own first or fourteenth amendment rights.

## MODIFICATION ORDER

No modification of this decision or action is required.

ROBERT A. HOREL
Warden

$C-7$

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **JAN 2 2 2008**

In re:    Juan Martinez, H93376
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0712061          Local Log No.: PBSP-07-01890

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that the Pelican Bay State Prison (PBSP) Institution Gang Investigator (IGI) has inappropriately confiscated his mail and are circumventing the approved mail regulations as outline in California Code of Regulations, Title 15, Section (CCR) 3147. The appellant asserts that the IGI provided him a CDC Form 128-B, General Chrono that identified the confiscated correspondence; however, the CDC 128-B does not provide enough information for him to prepare a defense. The appellant contends that this CDC 128-B is then placed in his central file and is used as evidence of gang activity. The appellant asserts that the IGI should use the CDC Form 1819, Notification of Disapproval-Mail/Packages/Publications relative to the denial of mail. The appellant requests that the IGI use the CDC 1819 form, to be issued his incoming mail, and for the CDC 128-B be removed from his central file.

**II    SECOND LEVEL'S DECISION:** The Second Level of Review (SLR) found that pursuant to CCR 3147 (a)(5) "The inmate and will be promptly informed in writing of the reason the mail is being disallowed; the disposition to be made of the mail; the name of the official disallowing the mail; and, the name of the official to whom an appeal may be directed. The notice to the inmate shall include the name and date of the publication, or the name and address of the sender, and shall inform the inmate of the disposition that shall be made, if an appeal is not submitted to the named official within 15 days of the date of the notice." The SLR advised the appellant that the CDC 128-B meets all of the aforementioned criteria and there is no regulatory requirement that the CDC 1819 must be used relative to the denial of mail. The SLR noted that the appellant is a validated Mexican Mafia (EME) associate and has been identified as using the mail to further the agenda of the EME. The SLR provided the appellant a comprehensive analysis of the disapproved mail in that the sender was attempting to communicate gang information to the appellant relative to EME activities. The SLR denied the appeal.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.    FINDINGS:** The documentation and arguments are persuasive that the appellant has failed to support his appeal issues with sufficient evidence or facts to warrant a modification of the SLR. The Director's Level of Review (DLR) concurs that the PBSP is not required to use the CDC 1819 relative to the denial of inmate correspondence. The PBSP has presented a clear penological justification to support the IGI policy of documenting the disapproval of inmate mail on a CDC 128-B. The IGI staff are on the frontlines of combating the rampant gang activity within CDCR and are utilizing various investigative methods to interdict gang communications. The gang members housed at PBSP must use the mail to communicate there gang messages based upon the fact that they are prohibited from using the telephone, and have very little direct contact with persons outside of the institution. The DLR finds that pursuant to CDC Operations Manual Section 72010.7.2 the CDC form 128-B is an appropriate form to document information relative to an inmate's incarceration. The appellant has not presented any evidence that his due process has been violated due to the PBSP IGI use of the CDC 128-B in lieu of the CDC 1819. The DLR concurs that the SLR articulated the illicit gang communications of the appellant's correspondence thus subjecting the correspondence to confiscation. Therefore no relief is provided at the DLR.

*C -8*

JUAN MARTINEZ, H93376
CASE NO. 0712061
PAGE 2

**B. BASIS FOR THE DECISION:**
California Penal Code Section: 5058
CCR: 3000, 3001, 3006, 3023, 3130, 3131, 3136, 3139, 3147, 3270, 3378, 3380

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
        Appeals Coordinator, PBSP

C - 9

1. <u>DECLARATION OF SERVICE BY U.S. MAIL.</u>

2.

3. CASE NAME: MARTINEZ V. Tilton, et al.
   CASE NO.: C07-4684 CRB (PR)

4.

5. I Declare:

6.         I am the plaintiff in this Case, and am a party to this
7. Matter, On 6- -2008, I Served the attached;

8. PLAINTIFF'S Brief in OPPOSITION to defendants Motions
9. TO DISMISS AND FOR SUMMARY JUDGEMENT.

10.

11. Declaration of PLaintiff in Opposition to defendants
12. Motion for Summary Judgment.
    (With Exhibits)

13.

14.    By placing a true Copy thereof enclosed in a sealed
15. envelope with postage fully prepaid, in the general Mail
16. Collection System. Via Legal Librarian, at PBSP SHU
17. Addressed as follows.

18. Kenneth T. Roost.                US. DISTRICT COURT
19. Deputy Attorney General.        NORTHERN Dist of Calif
20. 455 Golden Gate Avenue st.11000    450 Golden Gate Avenue.
21. San Francisco Cal. 94102-7004.    SAN Francisco Ca. 94012.

22.

23.    I Declare Under penalty of Perjury, under the Laws of
24. the State of California the foregoing is true and Correct and
    that this declaration Was Executed on 6- -2008. at PBSP
25. SHU in Crescent City Calif.

26.

27. <u>Juan Angel Martinez</u>
28. plaintiff/Declarant.                            6/17-08
                                        Signature.

$ 02.37⁰

NAME: Juan Angel Martinez

CDC NO: H-93376 HOUSING: C-7-214

PELICAN BAY STATE PRISON
P.O. BOX 7500
CRESCENT CITY, CA 95532

U.S. Northern Dist. of Ca.
U.S. Courthouse
450 Golden Gate Ave.
San Francisco, Ca.  94102-3483