1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DAVID S. CHANEY
Chief Assistant Attorney General
3 | ROCHELLE C. EAST
Acting Senior Assistant Attorney General
4 | THOMAS S. PATTERSON
Supervising Deputy Attorney General
5 | KENNETH T. ROOST, State Bar No. 231444
Deputy Attorney General
6 |   455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
7 |   Telephone: (415) 703-5824
  Fax: (415) 703-5843
8 |   Email: Ken.Roost@doj.ca.gov

9 | Attorneys for Defendants Tilton, Scavetta, Horel,
Silva, Vanderhoofven, McGuyer, Enos, Barneburg,
10 | Countess, Milligan, and Estes

11

12 | IN THE UNITED STATES DISTRICT COURT

13 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

14 | SAN FRANCISCO DIVISION

15

16 | **JUAN ANGEL MARTINEZ, JR.,**      C 07-4684 CRB (PR)

17 |                           Plaintiff,    **DEFENDANTS' REPLY REGARDING THEIR**

18 |     v.                        **MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

JAMES E. TILTON, et al.,

19

20 |                        Defendants.

21 | ### Introduction

22 |     Martinez's two claims concerning (1) the notice of three confiscated letters and (2) the

23 | policy to place point-of-origin stamps on outgoing inmate mail from the Security Housing Unit

24 | (SHU) should be dismissed because Martinez fails to state a constitutional claim. Further,

25 | Defendants are entitled to summary judgment because the undisputed facts show that Martinez's

26 | First Amendment rights were not violated in either claim. Lastly, Defendants are entitled to

27 | qualified immunity because their actions were lawful, and because reasonable prison officials in

28 | Defendants' position could have believed that their actions were lawful.

Defs.' Reply re Mots. Dismiss & Summ. J.                            *Martinez v. Tilton, et al.*
                                                  *C 07-4684 CRB (PR)*

## Argument

### I.
**MARTINEZ FAILS TO RAISE A CONSTITUTIONAL CLAIM CONCERNING THE THREE CONFISCATED LETTERS, AND THE UNDISPUTED FACTS SHOW THAT MARTINEZ'S FIRST AMENDMENT RIGHTS WERE NOT VIOLATED.**

**A.    Martinez's Claim Concerning Three Confiscated Letters Must Be Dismissed Because No Constitutional Claim Is Raised.**

An inmate, when his mail is confiscated, is constitutionally entitled to notice of the confiscation decision, and to appeal the decision to a prison official other than the one making the initial confiscation decision. *See Frost v. Symington*, 197 F.3d 348, 353–54 (9th Cir. 1999); *Krug v. Lutz*, 329 F.3d 692, 697–98 (9th Cir. 2003).  But Martinez's claim concerning three confiscated letters does not allege deprivation of these two entitlements.

Instead, Martinez observes that he received notice of two confiscated letters on a form 128-B rather than form 1819; but he does not argue that this notice was lacking in any respect. Martinez also acknowledges that he received notification of the third confiscated letter, and appealed its confiscation to officials other than the one making the initial confiscation decision. He simply observes that he did not fill out the entire notice form, and that the confiscated letter was later lost; these concerns do not rise to a First Amendment violation.

Because Martinez fails to make any constitutional claim concerning confiscated mail, this claim must be dismissed.

**B.    Defendants Are Entitled to Summary Judgment Against the Claim Concerning Confiscated Mail Because Martinez Was Notified of the Confiscation Decisions, and Appealed Them to Prison Officials Other than the Ones Making the Initial Confiscation Decisions.**

In his opposition, Martinez abandons his concern that notice of two of the three letters was provided on one bureaucratic form rather than another, and instead laments that his notice through the form 128-B is also used to demonstrate continued prison-gang affiliation, resulting in his continued housing in the SHU.  (Pl.'s Opp'n Mots. Dismiss & Summ. J. 4.)  But Martinez's retention in the SHU is not at issue here, and Martinez does not dispute that the form 128-B is sufficient to alert him to a confiscated mailing, and indeed provides all the information given on

Defs.' Reply re Mots. Dismiss & Summ. J.

*Martinez v. Tilton, et al.*
C 07-4684 CRB (PR)

1  the alternative form 1819. (*See* Decl. McGuyer Supp. Defs.' Mot. Summ. J. ¶ 10.)

2      Martinez also does not dispute that he received confiscation notification of the third letter,

3  and review of the confiscation decision by prison officials other than the one making the initial

4  confiscation decision.  Martinez's administrative grievance concerned not whether Martinez

5  received confiscation notice, but whether the decision to confiscate was correct, and whether he

6  was able to sign off on this notice to direct prison officials how he wished the mailing to be

7  disposed. (*See* Decl. Roost Supp. Defs.' Mot. Summ. J. Ex. B-2.)  And whether the notification

8  form was properly filled out is immaterial because it indisputably put Martinez on notice that a

9  letter sent to him was confiscated—as shown by Martinez's administrative grievance contesting

10 the rationale of the confiscation decision (*see id.*)—and this is all that the law requires. *See Frost*

11 197 F.3d at 353.

12     Martinez further asserts that reviewers of this third letter's confiscation decision, at the

13 second level of appeal, "were not able to adequately review the decision" because the confiscated

14 letter at issue was, by this point, lost. (Pl.'s Opp'n Mots. Dismiss & Summ. J. 19.)  But the letter

15 was not indicated as lost at the first level of review, and even in the letter's absence, the basis of

16 the confiscation could still be reviewed. (*See* Decl. Roost Supp. Defs.' Mot. Summ. J. Ex. B-11.)

17 The fact that Martinez's letter was lost at some point during the review process does not create a

18 First Amendment violation.  Because Martinez was notified of the confiscation decision, and

19 appealed it to reviewers other than the initial decisionmaker, his constitutional rights were not

20 violated.

21
**II.**
**MARTINEZ FAILS TO RAISE A CONSTITUTIONAL CLAIM**
22 **CONCERNING THE POLICY OF STAMPING OUTGOING MAIL,**
**AND THE UNDISPUTED FACTS SHOW THAT THIS POLICY**
23 **REASONABLY RELATES TO LEGITIMATE PENOLOGICAL**
**PURPOSES.**
24

25 **A.  Martinez's Claim Concerning the Point-of-Origin Stamping Policy Must Be**
**Dismissed Because No Constitutional Claim Is Raised.**
26

27     Inmates have a First Amendment right to send mail, *see Witherow v. Paff*, 52 F.3d 264, 265

28 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)), but that issue is not

Defs.' Reply re Mots. Dismiss & Summ. J.                    *Martinez v. Tilton, et al.*
C 07-4684 CRB (PR)

3

1    before the Court. Rather, Martinez discusses allegations concerning CDCR's policy at PBSP to

2    place point-of-origin stamps atop inmate correspondence. Martinez does not assert that he

3    cannot send mail, or that his mail is rendered unreadable by the point-of-origin stamp. Any harm

4    to Martinez's outgoing mail is de minimus, and the allegations here do not rise to a First

5    Amendment violation. His claim concerning the point-of-origin stamping policy, therefore, must

6    be dismissed.

7       **B. Martinez's Claims Concerning the Stamping Policy Are Baseless and Inaccurate.**

8       In his opposition, Martinez contends that his outgoing mail is "affected and censored" by

9    the outgoing point-of-origin stamp. (Pl.'s Opp'n Mots. Dismiss & Summ. J. 14.) But his blithe

10    use of the word "censored" is misplaced, because nowhere does Martinez substantively allege or

11    show that any Defendant has attempted to suppress specific content through use of the point-of-

12    origin stamp. Contrariwise, the ink is effectively a transparent red, which if anything highlights

13    the black ink beneath, in which prisoners write. (Decl. McGuyer Supp. Defs.' Mot. Summ. J. ¶

14    7.)

15       Further, Martinez alleges in his opposition that, rather than censorship, the stamping

16    policy's "true purpose" is to discomfort inmates' correspondents, who see the place-of-origin

17    stamp and presume the inmate is "suspected of illegal activities"—a paradoxical concern for

18    Martinez, who is a validated prison-gang participant and state inmate serving a criminal sentence.

19    (Pl.'s Opp'n Mots. Dismiss & Summ. J. 8.) This allegation is also entirely unsupported by any

20    evidence. Martinez's claims concerning the stamping policy are inaccurate, and fail to raise a

21    First Amendment allegation.

22       **C. The Policy Under Which Outgoing SHU Mail Receives a Place-of-Origin Stamp**

23         **Meets the *Turner* Test Because It Reasonably Relates to Legitimate Penological Purposes.**

24       Finally, the point-of-origin stamping policy is not an exaggerated response under the *Turner*

25    test. To prevent intermediaries from forwarding prison-gang communications back into prison,

26    every page of inmate correspondence leaving the Pelican Bay State Prison SHU receives a stamp

27    identifying the page's place of origin. (Decl. McGuyer Supp. Defs.' Mot. Summ. J. ¶ 6.) The

28    stamps are intentionally large and diagonally placed across the writing to make it difficult for

Defs.' Reply re Mots. Dismiss & Summ. J.

Martinez v. Tilton, et al.
C 07-4684 CRB (PR)

4

1  intermediaries outside prison to photocopy and forward prison-gang mail without alerting

2  correctional officers inside prison to the pages' prison origin. (*See* Suppl. Decl. McGuyer Supp.

3  Defs.' Mot. Summ. J. ¶ 3.)  Outgoing art and photographs are only stamped on back in

4  compromise to protect the artistic nature of the enclosure. (Decl. McGuyer Supp. Defs.' Mot.

5  Summ. J.  ¶ 8.)  The envelopes are also stamped with the point of origin, to prevent bouncing

6  mail from one inmate to another through the use of fraudulent return addresses. (*See* Suppl.

7  Decl. McGuyer Supp. Defs.' Mot. Summ. J. ¶ 4.)  Finally, because over 95% of inmates in SHU

8  are prison-gang participants, all outgoing SHU mail is stamped to efficiently streamline

9  correctional officers' duties and prevent suspicion and jealousy within the SHU population. (*Id.*

10  ¶ 5.)

11
## III.
## DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.
12

13  As discussed above, Martinez does not raise any constitutional claim, and he has suffered no

14  violation of his constitutional rights.  Defendants are therefore entitled to qualified immunity.

15  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  But even if a constitutional claim could be made

16  out in this matter, Defendants are still entitled to qualified immunity.

17  Regarding the three confiscated letters making up the first claim in this matter, Martinez

18  admits that he was notified of the three confiscations and that he appealed the decision to other

19  prison officials—and this is all that the law requires.  *See Frost v. Symington*, 197 F.3d 348,

20  353–54 (9th Cir. 1999); *Krug v. Lutz*, 329 F.3d 692, 697–98 (9th Cir. 2003).  To the extent that

21  Martinez takes issue with the quality of his notifications and appeal reviews, he argues for

22  standards that are unsupported by case law, with therefore necessarily uncertain contours.

23  Similarly, the point-of-origin stamping policy does not prevent an inmate from sending

24  mail, leaving Martinez's rights intact.  *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995)

25  (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  Outgoing mail is perfectly readable

26  because the stamps are placed diagonally in red ink over the inmate's black-ink writing.  To the

27  extent that Martinez contends that any adulteration to his mail offends his First Amendment right

28  to send mail, he again argues for standards that are unsupported by case law, with therefore

1   necessarily uncertain contours.

2        Defendants are thus entitled to qualified immunity, even if the Court were to entertain

3   constitutional claims here, because it would not have been clear to reasonable prison officials in

4   Defendants' positions that their actions were unlawful. *Saucier*, 533 U.S. at 202.

5

6                                      **Conclusion**

7        Martinez fails to raise any First Amendment claim in his complaint and, as such, this suit

8   must be dismissed.  Further, Martinez was not deprived of any First Amendment rights because

9   the point-of-origin stamping policy at issue serves legitimate penological interests.  And

10  Martinez's claims about confiscated mail merely allege that he received notice on the wrong

11  form and through the wrong procedure—not that he received no notice at all, or that he could not

12  appeal the decision to alternative prison officials.

13       Lastly, in accord with the above, Defendants are entitled to qualified immunity because they

14  did not violate Martinez's First Amendment rights—or, if they arguably somehow did, a

15  reasonable official in Defendants' position could have thought that their conduct was lawful.

16  //

17  //

18

19

20

21

22

23

24

25

26

27

28

Defs.' Reply re Mots. Dismiss & Summ. J.                    *Martinez v. Tilton, et al.*
                                                            C 07-4684 CRB (PR)

1    Defendants therefore respectfully request that this Court grant Defendants' motion to

2  dismiss or, in the alternative, their motion for summary judgment, and dismiss the entire action

3  as to all Defendants.

4

5    Dated: July 16, 2008

6                        Respectfully submitted,

7                        EDMUND G. BROWN JR.
                         Attorney General of the State of California

8                        DAVID S. CHANEY
9                        Chief Assistant Attorney General

                         ROCHELLE C. EAST
10                       Acting Senior Assistant Attorney General

11                       THOMAS S. PATTERSON
                         Supervising Deputy Attorney General

12

13

14

15                       KENNETH T. ROOST
                         Deputy Attorney General
16                       Attorneys for Defendants Tilton, Scavetta, Horel, Silva,
                         Vanderhoofven, McGuyer, Enos, Barneburg, Countess, Milligan,
                         and Estes

17

18    20122139.wpd
19    SF2008400483

20

21

22

23

24

25

26

27

28

Defs.' Reply re Mots. Dismiss & Summ. J.

                                                            *Martinez v. Tilton, et al.*
                                                            C 07-4684 CRB (PR)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Martinez v. Tilton, et al.**

Case No.:    **C 07-4684 CRB (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On July 16, 2008, I served the attached

**DEFENDANTS' REPLY REGARDING THEIR MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

**SUPPLEMENTAL DECLARATION OF K. MCGUYER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Juan Angel Martinez, Jr.
H-93376
Pelican Bay State Prison
P. O. Box 7500
Crescent City, CA 95532
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **July 16, 2008**, at San Francisco, California.

| M. Xiang | | |
| --- | --- | --- |
| Declarant | | Signature |